Gerald E. GENTRY, an infant over the age of 14 years, by Eunice Bradford, his guardian ad litem,

v.

The UNITED STATES.

No. 312–74.

United States Court of Claims.

Nov. 17, 1976.

Richard A. Weinstock, Ventura, Cal., atty. of record, for plaintiff.

Donnie Hoover, Washington, D.C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D.C., for defendant.

Before SKELTON, NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This case comes before the court on the parties' cross-motions for summary judgment on which we have received oral argument. Plaintiff, an illegitimate minor child, asks us by his guardian *ad litem* to award him benefits said to be due him under the Civil Service Retirement Act of 1930, as amended, 5 U.S.C. §§ 8331 *et seq.* (1970), as the survivor of his deceased father, a retired civilian welder for the Navy. The Civil Service Commission's (CSC) Bureau of Retirement, Insurance, and Occupational Health, without deciding whether the deceased civil servant annuitant was the natural father of plaintiff or recognized him as his child, denied plaintiff's claim to survivors' benefits under 5 U.S.C. § 8341(e) (1970) solely because he did not live in the deceased annuitant's home "in a regular parent-child relationship." The bureau reasoned that the Act (hereafter "annuity statute" or "statute") under which plaintiff claimed required him, as an illegitimate, to have lived with his father in order to be entitled to benefits. 5 U.S.C. § 8341(a)(3)(A)(ii) (1970). Plaintiff now answers that he did not live with his alleged father, but that the "live-with" requirement of the statute must be ignored be-

cause the requirement discriminates against illegitimates in violation of the Fifth Amendment to the Constitution and is therefore void, and that the remainder of the statute, read without the offending language, entitles him to survivors' benefits. To decide this matter, we must first consider our authority to resolve the case under the Tucker Act, as recently construed by the Supreme Court in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (hereafter *Testan*).

## I. Jurisdiction

Defendant says that we lack jurisdiction over this suit because it is not a claim for money presently due and owing, as prescribed by a statute or the Constitution. It bases this argument on *Testan* and *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), in which it was held that (apart from claims based on contract or illegal exactions or retentions of money) this court can only render judgment for money when some law can, in itself, fairly be interpreted as prescribing a payment by the United States in the circumstances present.[1] Defendant argues that no such law exists in this case. The due process clause of the Fifth Amendment is clearly not such a law, nor do we know of any

valid regulation promulgated pursuant to statute that prescribes the payment plaintiff asks. Defendant says that the annuity statute, since it expressly excludes plaintiff from its coverage by virtue of the live-with requirement, cannot be read to provide for the payment of benefits to plaintiff. Since plaintiff seeks to avoid this predicament and construct a mandate to pay from the annuity statute's language, he argues, as noted before, that we can order payment on the theory that the live-with language is void as unconstitutional, and that the remaining provisions of the statute specify the payment of his claimed benefits. Thus, we must decide whether we can disregard, on constitutional grounds, one provision of a statute, and render judgment on the provisions that remain standing (if severable).

■ Defendant advances two reasons for its view that this decision must be in the negative. First, it says the annuity statute, whether or not the live-with provision is unconstitutional, cannot be understood to require payment of benefits to a nonresident illegitimate child. Of course, this begs the question of severability, for only after inquiring into Congress' intent as to the whole statute can we respond to defendant's assertion.[2] Secondly, and more to the

1. In *Testan* the Court held that this court was without power to remand to the Civil Service Commission a case in which two civil service attorneys asked reclassification to a higher grade and appropriate back pay. The Court said that our remand power under Pub.L. 92–415, now codified as 28 U.S.C. § 1491 (Supp. V, 1975), extended only to cases otherwise within this court's jurisdiction. Citing heavily *Eastport S.S. Corp.,* the Court ruled that, where "the plaintiff is not suing [the United States] for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself * * * can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" 424 U.S. at 401–02, 96 S.Ct. at 955. Neither the Classification Act, 5 U.S.C. §§ 5101 *et seq.* (1970), nor the Back Pay Act, 5 U.S.C. § 5596 (1970), provided for the payment of such compensation for a wrongful classification, said the Court, and under the Tucker Act, as interpreted in *United States v. King,* 395 U.S. 1, 3, 89 S.Ct.

1501, 23 L.Ed.2d 52 (1969), this court has jurisdiction of cases only where the payment of "actual, presently due money damages" is the remedy sought. According, this court was found without jurisdiction to issue the remand order to the Commission because the claim did not involve *presently* due money damages; indeed, the purpose of the remand order was to allow the Commission to create the entitlement to pay by following a court-directed job comparison that would lead the Commission to conclude that the attorneys' classifications were erroneously low.

2. Defendant also argues that plaintiff may not contest the validity of a part of the statutory scheme while claiming benefits under the balance of it, citing Justice Rehnquist's plurality opinion in *Arnett v. Kennedy,* 416 U.S. 134, 152–54, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Unlike the appellee in *Arnett,* however, plaintiff can point to no benefits flowing to him alongside the allegedly unconstitutional detriment created by the same statute. In plaintiff's case, either the live-with restriction that he

point, it argues that this court, before it can reach the conclusion that the remainder of the statute mandates payments to plaintiff, must first have declared the allegedly offensive language void as against the Fifth Amendment, but that this court may not, make such a declaratory judgment, citing *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

Defendant's second argument is inapt precisely because it misperceives the process of constitutional adjudication. Plaintiff has come before this court, not asking for a declaration of his rights as in *King,* but seeking money allegedly due him. The money claim is grounded, according to plaintiff, on the statute as it now exists—at least when read in light of the Fifth Amendment—and thus states a claim for money presently due, not requiring further action on anyone's part to create the entitlement thereto. This is exactly the kind of claim within our jurisdiction under *Testan.* The issue of the constitutional validity of the live-with requirement arises only incidentally, necessitating an answer by the court in the course of construing the annuity statute to determine whether payment is indeed owing to plaintiff. It is in this fashion that constitutional claims had arisen and been decided in the courts of the United States in the 140 years of their existence before the passage of the Declaratory Judgment Act in 1934, 28 U.S.C. § 2201 (1970). In *United States v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946), the Supreme Court affirmed this court's judgment awarding back pay to federal employees whose salaries had been barred by Act of Congress, in effect discharging them from their jobs. The Court held the Act an unconstitutional bill of attainder, and said the award of pay would lie despite the fact that the Act, the very measure which appropriated funds to pay the employees' salaries, did not authorize payment but sought (unconstitutionally) to stop payment. The

Act was construed to provide for paying their salaries, yet this could only be accomplished by reading out of the measure the constitutionally offensive language. The Court stated, 328 U.S. at 314, 66 S.Ct. at 1078, "[r]espondents claimed that their discharge was unconstitutional; that they consequently rightfully continued to work for the Government and that the Government owes them compensation * * *. Congress has established the Court of Claims to try just such controversies." In the present case, plaintiff asks us to do no more than the Court in *Lovett* said that we could and must do—read the relevant statute and award whatever payment it grants, omitting from our interpretation of its effect any constitutionally void provision contained in it.

■ Defendant's notion about the sequence of events leading up to a judgment in plaintiff's favor—the reading of the statute barring plaintiff's claim, then the decision that the live-with requirement is unconstitutional, and finally a finding of entitlement based upon a "rewritten" statute—is not founded on any case or rule cited to us, nor is it compelled as a matter of logic. The truth is that this court is bound by oath to read and give effect to the statute, but to do so only with regard to that portion that is constitutional. It is well established that an unconstitutional enactment is void *ab initio, Norton v. Shelby County,* 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886), and that judges may not give effect to it. *Younger v. Harris,* 401 U.S. 37, 52, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). If this court reads and gives effect to all of a statute that it can without transgressing the oath of loyalty to the Constitution, which is what plaintiff asks, it is not issuing a declaratory judgment at any time, or otherwise acting prior to judgment to create the entitlement upon which the judgment is based.

assails is invalid and he can establish qualification for benefits, or the restriction is valid and he is barred from benefits. Plaintiff's claim accordingly falls outside those that the Court has "previously viewed skeptically." 416 U.S.

at 152, 94 S.Ct. 1633. Defendant's argument on this point, reduced to essentials, amounts to no more than a reworking of its contention on severability, discussed *infra.*

■ While this court may and indeed must decide whether it can, consistent with the Constitution, give effect to the live-with requirement, in the course of ruling on plaintiff's entitlement under the annuity statute, we must first ask whether the allegedly offending language is severable from the remainder of the statute under which plaintiff claims. Obviously, for plaintiff's claim to succeed, the remaining provisions must be able to stand, giving rise to plaintiff's entitlement to benefits. If the live-with requirement is not separable from the other language of the statute, this court has no jurisdiction to grant recovery to plaintiff, whether the requirement is constitutional or not. If constitutional, the requirement bars plaintiff from the entitled classes, and he can point to no law that authorizes a payment of money to him. If unconstitutional and not separable, the legislative scheme authorizing payment falls, and there is no other law providing for the disbursement of such benefits. Because of the nature of this court's jurisdiction, we must depart from the usual practice of inquiring first into constitutionality and then into severability, and instead consider the latter first. In our view, we have jurisdiction because the allegedly offending requirement is severable from its statutory context.

The question of severability is answered by a practical inquiry into the legislature's intent on the internal relation of the various statutory provisions. " 'Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law'." *United States v. Jackson,* 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968), quoting from *Champlin Ref. Co. v. Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 76 L.Ed. 1062 (1932). That the live-with requirement is severable from the annuity statute is evident from an analysis of the statute's dominant purpose. Defendant tells us that the purpose of the annuity statute is to provide benefits for survivors

dependent or likely to be dependent upon the deceased annuitant. Indeed, so strongly is the legislation concerned, on its face, with the care of surviving dependents that the live-with requirement creates but a minor exception. The exclusion resulting from the requirement is sufficiently minute that it would be absurd to say no part of the legislation would have been enacted without the requirement. In fact, the legislative history shows that the live-with requirement was enacted well after the purpose of aiding dependents was fixed in the law, apparently as a reaction to a judicial construction of the statute. The 1956 amendments, Act of July 31, 1956, Pub.L. 854, ch. 804, 70 Stat. 744, sought *inter alia* to modify the survivors' benefits provisions introduced by the Act of February 28, 1948, Pub.L. 426, ch. 84, § 11, 62 Stat. 54, amending the Civil Service Retirement Act of May 29, 1930, ch. 349, § 12, 46 Stat. 476. The definition of "child" in the 1948 enactment had been interpreted by a district court to include all illegitimate children. *Visor v. United States,* Civ. No. 9922(2) (E.D.Mo., Feb. 12, 1955, unpublished). The effect of adding the live-with requirement to the definition of "child" was to narrow the class of potential beneficiaries.

This sequence of enactment demonstrates the clearly subordinate and, if constitutionally offensive, dispensable position of the live-with requirement. *United States v. Jackson, supra,* 390 U.S. at 586–91, 88 S.Ct. 1209. Further, and very importantly here, the thrust of the 1956 amendments did not vary significantly from the then-existing statutory focus on dependency, retaining the beneficiary status of those illegitimates whom, according to defendant, Congress thought most likely to be dependent, *i. e.,* those living with the annuitant in a regular parent-child relationship at the time of his death. We conclude from the legislative design and history, and the purpose as articulated by defendant, that the live-with requirement is subordinate in importance to, and independent of, the dominant congressional purpose embodied in the statutory

scheme, and thus severable from the remaining provisions of the scheme.[3]

■ Defendant's final challenge to our jurisdiction is based on its allegation that plaintiff failed to exhaust his administrative remedies. Defendant says we should decline to hear this claim at least until after the CSC's Appeals Review Board considers it. Plaintiff has not, it is true, presented his case to that board, as he was entitled to do under 5 C.F.R. § 831.107 (1974). We note, however, that the Retirement Bureau's first correspondence with plaintiff's mother, denying the benefits claimed by her on plaintiff's behalf, failed to inform of appeal rights. Further, despite this lack of notice, his mother did in fact petition the CSC a second time, asking "review" of the earlier denial. We have previously held that where a claimant is not advised of appeal rights, this court may, in its discretion, where the record otherwise warrants it, take jurisdiction notwithstanding a technical failure to exhaust administrative remedies. Grover v. United States, 200 Ct.Cl. 337, 346 (1973); Hagarty v. United States, 196 Ct.Cl. 66, 74, 449 F.2d 352, 355 (1971). Also, we have held that the "sufficiency of a notice of administrative appeal should be liberally construed as long as an adverse party is not prejudiced thereby." Pettit v. United States, 203 Ct.Cl. 207, 217, 488 F.2d 1026, 1031 (1973); Gernand v. United States, 18 Ct.Cl. 544, 412 F.2d 1190 (1969). Plaintiff's mother's second communication to the CSC, though directed to the Retirement Bureau instead of the Appeals Review Board, was a sufficient notice to the agency that review of the original adverse action was being sought by the claimant. Indeed, this is the authorized procedure. FPM Supp. 831–1, Subch. S18 (Apr. 30, 1969). Finally, it is significant that the bureau twice based its denial of benefits solely and squarely on the unambiguous language of the annuity statute, barring payments to nonresident illegitimates. Since the board, like the bureau, had no authority to consider an allegation that the live-with provision violates the Constitution, but was bound to read and apply the statutory prohibition as enacted, it is evident that an administrative appeal would have been futile. The futility of pressing a claim excuses the taking of steps otherwise required to exhaust administrative remedies. Pettit v. United States, supra. We conclude from the foregoing that this court may take cognizance of plaintiff's claim despite his failure to make a formal presentation of it to the Appeals Review Board, and also conclude that defendant was not prejudiced by that omission.

Defendant's motion for summary judgment, insofar as it relates to lack of jurisdiction and failure to exhaust administrative remedies, must be denied.

## II. Constitutionality

5 U.S.C. § 8341(e) (1970) grants certain monetary benefits to surviving children of a deceased civil service employee or annuitant. The same section defines the entitled children to include legitimate issue, adopted children, and any "stepchild or recognized natural child who lived with the employee * * * in a regular parent-child relationship."[4] 5 U.S.C. § 8341(a)(3)(A)(ii) (1970). The effect of this definition is to extend survivors' benefits to all children of a decedent save for those of his illegitimate issue who did not reside in his home. The latter are conclusively denied benefits under the annuity statute. Thus, children who did not reside with their father during his lifetime are classified at his death according to the legitimacy of their birth, and treated differently on that account: legitimates are paid survivors' benefits, and illegitimates are not. Further, his illegitimate children are classified at his death according to whether they lived with him during his

---

**3.** The same analysis applies to support a determination of severability where the dominant legislative purpose is that of aiding surviving children, regardless of dependency. See part II, infra.

**4.** The issues of recognition and support do not confront us now. Plaintiff has alleged they exist and defendant does not contest them for the purposes of the pending motion.

lifetime, and treated differently on that account: illegitimates who resided with him are given benefits, and nonresident illegitimates are denied those same benefits. Plaintiff argues that the annuity statute's definition of "child," insofar as it imposes a live-with requirement upon illegitimates, does not, because of the classification results just described, rationally relate to any permissible legislative goal underlying the statute. Accordingly, he says, the live-with requirement violates the equal protection of the laws as guaranteed to him by the due process clause of the Fifth Amendment. *Jimenez v. Weinberger,* 417 U.S. 628, 637, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974) (hereafter *Jimenez*); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Defendant, as already noted, has moved for summary judgment partly on the ground that the requirement is valid and bars plaintiff's claim on the merits. This requires us to decide the constitutional question.

Defendant urges that the statute's definition of "child," excluding nonresident illegitimates, "represents a determination by Congress of those classes of children who were the most probable object of financial support by the parent, and who are, therefore, most likely to suffer loss of financial support because of his death." Thus, repeating what was said before in the discussion of our jurisdiction, defendant views the support of financially dependent children as a primary purpose of the annuity statute. Defendant also says that a second congressional purpose, the prevention of "spurious claims of parentage," is served by the live-with requirement. Since the statutory scheme as it now stands rationally promotes these legislative goals, defendant argues, it is not vulnerable to attack under the due process clause. The purposes of aiding probable dependents and preventing spurious claims, the only purposes articulated by defendant, were also advanced as the reasons underlying the statutory classification in the *Jimenez* case. There, in support of the classification of children under the disability benefits provisions of the Social Security Act, the Government argued that

certain illegitimate children were conclusively denied benefits "because it is 'likely' that these illegitimates, as a class, will not possess the requisite economic dependency on the wage earner which would entitle them to recovery under the Act and because eligibility for such benefits to those illegitimates would open the door to spurious claims." 417 U.S. at 634, 94 S.Ct. at 2500. Nonetheless, the Court held the classification violative of equal protection under the Fifth Amendment. The similarity of the purposes advanced in support of the statutes' validity, and, as will be seen, the similarity of the two classifications themselves, requires us to examine *Jimenez* closely.

Under the disability benefit provisions at issue in *Jimenez,* a "child" of a disabled insured is entitled to benefits if he is "dependent" upon the insured. 42 U.S.C. § 402(d)(1) (1970). Section 416(h)(2) and (h)(3)(B) of the same title define such child only to include: (1) one considered a child by the intestate succession law for personal property of the insured's state of domicile, (2) one who would otherwise be considered a child but for the fact that the ceremonial marriage of the insured to the child's other parent was invalid for nonobvious defects, (3) one who was acknowledged by the insured in writing or decreed by a court to be the insured's child, or to whom the insured was ordered by a court to contribute support because of parentage, all prior to the beginning of the disability, and (4) one who was proven to the Secretary of HEW to be the child of the insured, and either living with the insured or supported by him, at the onset of the disability. The effect of this definition is to provide disability benefit payments for the legitimate children of a disabled insured, to his children illegitimate because of a formal defect in his marriage, and to such of his illegitimate children that his state's intestacy law allows to inherit from him. Further, it extends payments to those of his illegitimate children who lived with him, were financially dependent upon him, or were acknowledged by him before his disability began, but it excludes from benefits those illegitimates

not included above who were born, or first lived with him, or were first supported by him, or were first acknowledged by him, after the onset of his disability. Hence, for some illegitimates, though never for legitimates or some other illegitimates, timing becomes important to the question of entitlement. Finally, section 402(d)(3) presumes all who fit within the definition of "child" to be dependent, unless the child is illegitimate or adopted by someone else and he neither lived with nor was supported by the insured.

The appellants in *Jimenez* were the disabled insured's illegitimate children, born after the onset of his disability, whom he supported and acknowledged and with whom he lived. The Court found that the appellants' conclusive exclusion from disability benefits by virtue of the statute's definition of "child" was irrational when viewed against the statute's "primary purpose of * * * provid[ing] support for dependents of a disabled wage earner." 417 U.S. at 634, 94 S.Ct. at 2500. While considering the two purposes of the partial denial of benefits to be permissible in themselves, the Court went on to conclude that the result, excluding the appellants from benefits, did not rationally follow from those purposes. First of all, the Court simply did not accept the Government's assertion that Congress' purpose was to extend aid only to those "most likely" to be dependent. The Court appears to base its rejection of this purpose in part upon the broader rationale—providing support to dependents of a disabled insured—that it saw underlying the statute, and in part upon the legislative scheme itself. As to the latter, its opinion noted that legitimates, legitimated children, illegitimates that state law allowed to inherit from the insured, and children whose illegitimacy resulted from nonobvious defects in the insured's ceremonial marriage, all received benefits (if dependent) even though they were born after the onset of their parent's disability, leading it to conclude that the statute was not designed to make distinctions on the time of birth, or to deny benefits to children born after the disability began. It seems that the Court saw no reason, in giving effect to the purpose of aiding those "most likely" dependent, for drawing a line between some after-born illegitimates, on the one hand, and after-born legitimates and some other after-born illegitimates, on the other hand, denying support payments to the former, while giving them to the latter. Hence, the statutory "means," entailing the partial exclusion of illegitimates, did not measure up to the supposed legislative "end."

The promise of the second purpose, the avoidance of spurious claims, was likewise found unfulfilled in the statute's result. Though not rejecting the Government's assertion that "the possibility that evidence of parentage or support may be fabricated is greater when the child is not born until after the wage earner has become entitled to benefits," the Court reasoned that "[i]t does not follow * * * that the blanket and conclusive exclusion of appellants' subclass of illegitimates is reasonably related to the prevention of spurious claims." Again apparently adverting to the statute's primary purpose, the opinion said "it would not serve the purposes of the Act to conclusively deny them an opportunity to establish their dependency and their right to insurance benefits, * * *." Apart from this failing of the means to further the end, the spurious claims rationale was not in fact promoted by the statute's partial exclusion of illegitimates because "the potential for spurious claims is exactly the same as to both" the covered after-born illegitimates and the excluded after-born illegitimates. 417 U.S. at 636, 94 S.Ct. at 2501. After observing that the statutory scheme, as it stood, was both overinclusive, extending benefits to legitimates and some illegitimates who were "deemed to be dependent" by 42 U.S.C. § 402(d) even though they were not actually dependent, and underinclusive, presumptively denying benefits to those in appellants' subclass who may in fact have been dependent, the Court concluded its opinion with the statement:

　* * * for all that is shown in this record, the two subclasses of illegitimates

stand on equal footing, and the potential for spurious claims is the same as to both; hence to conclusively deny one subclass benefits presumptively available to the other denies the former the equal protection of the laws * * *. [417 U.S. at 637, 94 S.Ct. at 2502.]

The Court's objection to the conclusive exclusion of some illegitimates from benefits under a statutory scheme created to aid those financially dependent, particularly where that statute presumptively includes still other illegitimates in the class of those eligible for benefits, states a rule of law that controls the result in the present case. The facts and the nature of the statute in this case do not differ materially from those in *Jimenez.* The legislative purposes articulated by defendant are practically identical to those proffered in *Jimenez,* as set out previously.

Plaintiff, allegedly the illegitimate child of deceased civil service annuitant Leroy Gentry, did not live with the annuitant, in a regular parent-child relationship or otherwise, at any time prior to the annuitant's death. Instead, plaintiff lived with his mother, his guardian *ad litem* here, who had custody of him under local law. Plaintiff's mother says in an affidavit of record that Leroy Gentry's acknowledgment of his paternity of plaintiff can be established in an evidentiary hearing. Hence, plaintiff attacks the constitutionality of only that portion of 5 U.S.C. § 8341(a)(3)(A)(ii) which the CSC said barred him from benefits because he did not live in the annuitant's residence as his child.

The statute in *Jimenez* presumptively extended benefits to supported or resident illegitimates born before the onset of disability, as well as to all legitimates no matter when born, but conclusively denied benefits to illegitimates born after the disability began. The statute in the present case creates a right to survivors' payments in recognized illegitimate children who lived with the annuitant, as well as in all his legitimate children without regard to their residence, but conclusively bars such payments to illegitimates who did not live with

him. Just as in *Jimenez,* where the exclusionary language did not promote the purpose of aiding those most probably dependent, so does the live-with requirement here not rationally follow from that purpose in this case. Here, as much as in *Jimenez,* the provision barring a subclass of illegitimates from benefits, though some members may be dependents, conflicts with the overall aim of aiding dependents. Further, like the case with *Jimenez,* the legislative scheme itself shows that residence with the annuitant is not critical to the qualification for benefits, in that legitimate children may receive payments whether they lived with the annuitant or not. No good reason appears, in light of the purpose of financially assisting those most probably dependent, for differentiating between potentially dependent but nonresident illegitimates, on the one hand, and resident illegitimates along with resident and nonresident legitimates, on the other. The classification of illegitimates, as embodied in the live-with requirement, is not justified by the basic legislative purpose.

The legislative goal of preventing spurious claims of parentage is no more promoted by the live-with requirement than it was by the banning of after-born illegitimates in *Jimenez.* While the evidentiary problem with respect to nonresident illegitimate claimants may be a greater one, as the Court acknowledged might be true regarding after-born illegitimates, it does not follow in the Court's words, "that the blanket and conclusive exclusion of [plaintiff's] subclass of illegitimates is reasonably related to the prevention of spurious claims." First, the statute's purpose of aiding familial survivors is not served by denying plaintiff's subclass any opportunity to demonstrate parentage. Second, the barring of nonresident illegitimates hardly promotes the goal of avoiding spurious claims, for the potential of false claims is the same as to both resident and nonresident illegitimates, just as it was the same as to both subclasses of illegitimates in *Jimenez.* As plaintiff's reply brief well points out:

* * * defendant has not shown how [the live-with requirement would help to

bar spurious claims], other than to assert that "it is highly unlikely that a claim on behalf of an alleged illegitimate child who is living with the alleged parent is spurious."

* * * In this day and age because of the high rate of divorce and separation among the adult population it is highly likely for any woman's children to be living with an unrelated adult male. Suppose the male dies and the woman claims that the children are his. How does the "lived with" requirement help to bar such a spurious claim? * * *.

The live-with requirement causes the annuity statute to be underinclusive, presumptively denying benefits to nonresident illegitimates who may be dependent. In concluding that the requirement cannot withstand constitutional scrutiny, we can only echo the Court's final remarks in *Jimenez.* For all that appears from the papers before us, the two subclasses of illegitimates stand on equal footing, the potential for spurious claims does not differ from one to the other, and the different treatment of legitimates, which serves as a guide to the overall purpose of the statute, remains unexplained. On this basis, "to conclusively deny one subclass benefits presumptively available to the other denies the former the equal protection of the laws." 417 U.S. at 637, 94 S.Ct. at 2502. The live-with requirement denies plaintiff due process in violation of the Fifth Amendment.

The recent case of *Mathews v. Lucas,* 427 U.S. 495 (1976), 96 S.Ct. 2755, 49 L.Ed.2d 651, is not contrary to this conclusion. *Lucas* dealt with a different provision of the same social security scheme considered in *Jimenez.* In *Lucas* it was claimed that the failure to include a nonresident, nonsupported illegitimate child among those "deemed dependent," and thus qualified for survivors' benefits, deprived appellees of equal protection. The statutory provision at issue, 42 U.S.C. § 402(d) (1970), presumes

the financial dependency of legitimate children, acknowledged illegitimates, and those children illegitimate due to formal defects in the marriage of the deceased insured. Other illegitimate children were required to prove actual dependency upon the insured in order to be eligible for payments. The significant point, and indeed the one that distinguishes *Jimenez* and the present case from *Lucas,* is that the excluded illegitimates were nevertheless permitted under the statutory scheme to establish their residence with or dependency on the insured, and thus qualify for benefits. The Court specifically stated: " * * * this conclusiveness in denying benefits to some classes of afterborn illegitimate children, which belied the asserted legislative reliance on dependency in *Jimenez,* is absent here, for, as we have noted, any otherwise eligible child may qualify for survivorship benefits by showing contribution to support or cohabitation, at the time of death." 427 U.S. at 512, 96 S.Ct. at 2765. Thus, the statute comported with the announced purpose of aiding dependents. The Court found no constitutional defect in Congress' attempt to approximate those who might be dependent, where this did not entail cutting off from benefits those who actually were dependent, and did not base the demarcation line on the legitimacy of birth. In this case, however, as in *Jimenez,* the classification barring benefits to a subclass of illegitimates frustrates the dependency support scheme, and does so by employing birth status as the index to entitlement.

Defendant cites *Labine v. Vincent,* 401 U.S. 532, 539, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), in support of its argument that the live-with requirement is not unconstitutional. It says, paraphrasing the Court, that requirement did not create an insurmountable barrier to benefits.[5] Plaintiff, it argues, could have gained eligibility under the annuity statute simply by living with his alleged father prior to the latter's death. Thus, defendant attempts to make the re-

5. *Labine* upheld Louisiana's discrimination against illegitimate children in the intestate succession of property, the Court noting that the statute in question did not absolutely bar

inheritance by illegitimates. Their parents could by will designate them as heirs despite the statute.

quirement into something other than the conclusive bar condemned in *Jimenez.* Plaintiff, however, answers that the place of his residence, as a minor, was not within his choice. The law of his domicile, California, places his custody in his mother, where she is a fit parent. Cal.Civ.Code § 200 (West 1954); *Darwin v. Ganger,* 174 Cal. App.2d 63, 344 P.2d 353 (1959). From the record it appears that plaintiff's mother, his guardian in this action, had custody of him at all relevant times. Unless plaintiff's mother, Eunice Bradford, decided to take up residence with Leroy Gentry, or send plaintiff to live with him—under the same roof with Viney Gentry who is now Leroy Gentry's widow—plaintiff would not have any means of meeting the statute's live-with requirement, no matter how dependent he was on the deceased annuitant, and without regard to the alleged fact of parentage. Plaintiff was not in fact able to take up residence in his alleged father's home. We must not shut our eyes to the human realities of the present situation, as defendant would have us do in arguing that plaintiff had some choice about whether he would fall within the statute's excluded class. The truth is that he had no real opportunity to overcome the live-with requirement, and for this reason that requirement remains as much an insurmountable legislative barrier as the proscription of after-born illegitimates in *Jimenez.*

Before concluding this discussion, we must express some reservations about defendant's characterization of the purpose of the annuity statute's survivorship provisions. These do not, as in the case of the Social Security Act, explicitly specify dependency as a prerequisite to entitlement. Certain rules regarding the termination of benefits, when a child reaches majority and is not unable to work, and requiring that an illegitimate child live in a "regular parent-child relationship" with the employee or annuitant, suggest that aid to dependents is indeed the statute's primary concern. However, the absence of an express dependency requirement leads us to speculate that perhaps another congressional purpose is operating here. That purpose, we think, is the extension of benefits to surviving members of the immediate family of the annuitant, without regard to dependency. Viewed against this legislative intent, the live-with requirement still cannot stand under the due process clause. Analysis of the "spurious claims" rationale does not differ under this purpose, for the extending of benefits to those who actually are the annuitant's children is not served by an absolute ban on proof by nonresident illegitimates that they are his children. The potential for false claims of parentage is the same as to both the excluded and included subclasses of illegitimates, for reasons stated previously. However, if there is a congressional purpose to make payments available to those "most probably" the children of the annuitant, the analysis of the rationality of the nonresident illegitimate ban in light of that purpose must take a different tack. Where the legislative intent is to reach persons who are most likely the annuitant's children, as opposed to most likely dependent, it cannot be said that including all legitimate children in the class of eligibles, whether residing with the annuitant or not, is on its face unreasonable. Congress obviously did not embrace the impermissible goal of depriving illegitimates across the board of what it gave to legitimates, for one subclass of illegitimates (those who satisfy the live-with requirement) can qualify for benefits. The question, then, becomes whether, consistent with due process, Congress may absolutely deny to one subclass of illegitimates the same benefits it presumptively makes available to another, for the apparent purpose of avoiding inconvenience to administrators.

 The fashioning of classifications in aid of administrative convenience is not necessarily violative of constitutional guarantees. Such classifications, "though they may approximate, rather than precisely mirror, the results that case-by-case adjudication would show, are permissible under the Fifth Amendment, so long as that lack of precise equivalence does not exceed the bounds of substantiality [of relation to the statute's purpose] tolerated by the applica-

ble level of scrutiny." *Mathews v. Lucas, supra,* 427 U.S. at 509, 96 S.Ct. at 2764. Though a legislative presumption in *Lucas* made it more difficult, *but not impossible,* for a subclass of illegitimates to enjoy benefits available to legitimates and another subclass of illegitimates on less stringent terms, the presumption was sustained against constitutional attack. The Court expressly stated that "to serve administrative convenience" was the purpose of Congress in writing the presumption into the statute. However, as noted before the Court itself distinguished the legislative scheme it was upholding from one, as in *Jimenez* and the present case, where the classification employed did indeed make it impossible for an illegitimate child, otherwise eligible, to qualify for benefits. When the Court said in *Lucas,* 427 U.S. at 510, 96 S.Ct. at 2764, that the "applicable level of scrutiny" to a claim of discrimination against illegitimates "is not a toothless one," it cited *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), a sex discrimination case in which the Court held that a purpose of serving administrative convenience would not suffice to justify presumptively depriving one class of rights conclusively extended to another because of a legislative preference as to sex. We think the rule is that a legislative intent to serve administrative convenience by classification, though adequate to support the classification in some circumstances, is impermissible when that classification amounts to an absolute barrier to the enjoyment, by one subclass of illegitimates, of benefits presumptively made available to another subclass. Such a classification exceeds the bounds of substantiality tolerable as to illegitimates. To hold otherwise would permit the very kind of discrimination against illegitimates *qua* illegitimates that equal protection concepts, as embodied in the due process clause of the Fifth Amendment, stand to prohibit.

Since there is no permissible legislative purpose which the live-with requirement of

the annuity statute is known to promote in a rational manner, that requirement is void as against the due process clause of the Fifth Amendment. The statute must be construed, and payments made, without regard to the requirement. Defendant's motion for summary judgment must be denied.

### III. *Remand*

The annuity statute requires that the survivor (other than the spouse), in order to be entitled to benefits, be a "child" of the deceased employee or annuitant. Further, in the case of a natural child, as opposed to an adoptive child or one born in wedlock, the child must have been "recognized" by the decedent.[6] 5 U.S.C. § 8341(a)(3)(A)(ii) and § 8341(e) (1970). The CSC, under 5 U.S.C. § 8347(b) and (c) (1970), is the sole and final arbiter of "all claims" such as factual questions of dependency, parentage, and recognition arising under the annuity statute.

 It has never been determined that plaintiff is indeed the recognized, supported natural child of the deceased annuitant by whom he claims benefits. Defendant has not contested plaintiff's status as the recognized, supported natural child of the annuitant for purposes of its motion for summary judgment, while otherwise denying the annuitant's alleged paternity, support, and recognition of plaintiff. Defendant may properly do this, *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir. 1968); 6 J. Moore, Federal Practice ¶ 56.13, at 56–346 to 56–347 (1976), with the result that an issue of material fact exists barring us from granting plaintiff's cross-motion for summary judgment. Rule 101(d).

 Defendant has not submitted any affidavits in opposition to plaintiff's mother's sworn statement that the deceased annuitant fathered, recognized, and contributed to the support of plaintiff. Within 4 weeks of Leroy Gentry's death, plaintiff's mother filed the present survivors' benefits claim on plaintiff's behalf with the CSC's

---

**6.** Whether the recognition requirement constitutes another form of discrimination against illegitimates is not raised by plaintiff as a constitutional issue.

Retirement Bureau. Further, it appears from the record that she received from the Social Security Administration, on plaintiff's behalf, dependents' benefits by virtue of Leroy Gentry's retirement, and that she claimed and received plaintiff's social security survivors' benefits by virtue of the alleged father's death in the month following his death. Normally, defendant's unsupported denials of plaintiff's factual allegations would not save it from a grant of summary judgment in plaintiff's favor. *Pacific Far East Line, Inc. v. United States,* 513 F.2d 1355, 1358–359, 206 Ct.Cl. 378, 384–86 (1975); Rule 101(f). Here, however, as noted above, the statute commits basic factual determinations on which claims turn under the annuity statute to the CSC, and to it alone, unless of course fraudulent or arbitrary conduct at that level warrants judicial intervention. It would be improper to allow plaintiff to bypass this administrative procedure simply by the institution of suit. It is therefore necessary that the CSC be given the opportunity to decide whether plaintiff is in fact the child of the deceased annuitant, and whether the latter recognized and supported him as such. Accordingly, we must remand plaintiff's cause to the CSC with instructions to determine the answers to these questions and render to plaintiff any and all relief flowing therefrom. Rule 149.

Defendant's motion for summary judgment is denied, plaintiff's cross-motion for summary judgment is denied without prejudice to renewal, and the cause is remanded to the Civil Service Commission pursuant to Rule 149 and 28 U.S.C. § 1491 (Supp. V, 1975) with instructions to answer the unresolved questions stated in the opinion and grant all appropriate relief to plaintiff. Further proceedings are stayed before this court for a period of six (6) months from the date hereof. Plaintiff's counsel is designated to advise the court by letter to the clerk of the status of the remand proceedings pursuant to Rule 149(f). See also Rule 150. If plaintiff establishes the aforesaid requisites to the CSC's satisfaction but it refuses to pay him administratively, he can return to court for his money judgment.

The petition in this case asks not only a money judgment for the annuity in issue but for a declaratory judgment of unconstitutionality of the live-with provision. Defendant has asserted a jurisdictional challenge to the latter in an affirmative defense. We have here held that the live-with requirement is unconstitutional in the context of ruling with finality on defendant's motion. Our authority to issue a declaratory judgment is limited. *United States v. King, supra.* We are authorized to do so only where "it is tied and subordinate to a monetary award." *Austin v. United States,* 206 Ct.Cl. 719, 723, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). And of course we can do so where it is explicitly authorized, as in certain tax cases under section 1306 of the Tax Reform Act of 1976, approved Oct. 4, 1976, to appear as 28 U.S.C. § 1507. That portion of plaintiff's petition asking for a declaratory judgment is dismissed.

NICHOLS, Judge (concurring):

I join in the decision and in Judge Bennett's opinion. Much as I would like to avoid deciding on constitutional grounds, I cannot read the statute as allowing the illegitimate child to qualify for survivor benefits if he did not live with the civil service annuitant. And this is the administrative construction, which is always entitled to respect. The Supreme Court in *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), did not reconstruct the statute then before it in such a fashion, but took it as it read.

The heart of the matter is this: our society normally imposes different responsibilities on the parents of an illegitimate child, if they do not live together. The mother provides the home and rears the child. The father, if he admits his paternity or it is established by judicial proceedings, must furnish financial support. I have never heard of a bastardy complaint against a mother. Now, if both parents enact these roles, the mother can pass on survivorship benefits to the child, if a former civil serv-

ant, but the father cannot. This is a crude form of sexual discrimination against the male, like many statutory provisions of other kinds. My analysis is supported by *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); and *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The child is a victim of the discrimination and has standing to complain. In *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), the illegitimate child could have qualified for survivorship benefits by either having lived with or having received support from the father, and thus the Social Security legislation there involved did not discriminate against him in the same manner.

SKELTON, Judge (concurring in the result):

I do not think it is necessary to hold that 5 U.S.C. § 8341(a)(3)(A)(ii) (1970) is unconstitutional in order to obtain the result reached by the majority in this case. That section of the statute provides as follows:

§ 8341. *Survivor annuities.*

(a) For the purpose of this section—

(3) "child" means—

(A) * * * (ii) a stepchild or recognized natural child who lived with the employee or Member in a regular parent-child relationship;

It is logical to assume that by enacting this part of the statute relating to a stepchild and an illegitimate child, the Congress was establishing a test or method by which two facts could be proven or determined, namely (1) that the deceased employee was actually the parent or step-parent of the child, thereby eliminating spurious claims of a child not related to the employee, and (2) that the child was dependent upon the employee for support. The Congress obviously concluded that if a stepchild or illegitimate child was living with an employee, a presumption was created that the two above-mentioned conditions or requirements have been established, although the statute does not say so. Therefore, it is a question of how the live-with portion of the statute should be read and interpreted. It would be a rare case indeed and an almost unheard of situation if a child lives with an employee when the child is not related in any way to the employee and the employee is not supporting the child. A natural conclusion is that the live-with portion of the statute was inserted as a means of proving paternity and dependency.

Congress did not apply the live-with requirement to a legitimate child of an employee, as it can be assumed and presumed that an employee will support his natural child whether the child lives with the employee or not.

The statute should not be read nor interpreted as an absolute bar to annuity benefits for a stepchild or illegitimate child of an employee who cannot meet the live-with test, but should be read and interpreted so as to allow such a child to prove paternity and dependency in some other way. The majority is allowing such proof to be made in the instant case, but only after holding the live-with portion of the statute unconstitutional.

It is not necessary to hold any part of the statute unconstitutional in order to allow the plaintiff in this case to prove paternity and dependency at a trial in the manner correctly ordered by the majority. The statute should be read and interpreted so as to allow such proof if the live-with proof cannot be supplied.

There is a well-established rule that, if possible, a statute should be interpreted in such a way that it will be constitutional and valid rather than unconstitutional and invalid. This rule was aptly stated by the Supreme Court in *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937) as follows:

* * * The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. * * * [*Id.* at 30, 57 S.Ct. at 621.]

See also, Federal Trade Comm'n v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 68 L.Ed. 696 (1924); Panama R.R. Co. v. Johnson, 264 U.S. 375, 390, 445 (1924); Missouri Pacific R.R. Co. v. Boone, 270 U.S. 466, 472, 46 S.Ct. 341, 70 L.Ed. 688 (1926); Blodgett v. Holden, 275 U.S. 142, 148, 48 S.Ct. 105, 72 L.Ed. 206 (1927); Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 346, 48 S.Ct. 194, 72 L.Ed. 303 (1928); and 16 C.J.S. Constitutional Law § 98 at 357–58 (1956).

I would follow this rule and reach the same result as that reached by the majority without holding the live-with portion of the statute unconstitutional. For that reason, I concur with the result stated in the majority opinion.