Filed 11/8/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAJA DEVELOPMENT CO., INC., et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>NAPA SANITARY DISTRICT,<br><br>    Defendant and Respondent;<br><br>COUNTY OF NAPA,<br><br>    Real Party in Interest. | A162256<br><br>(Napa County<br>Super. Ct. No. 19CV000682) |

Plaintiffs Raja Development Co., Inc., Cashel, Inc., and Carter Randall Callahan (plaintiffs) are condominium owners who allege, in their third amended complaint, that a sewer service charge collected by defendant Napa Sanitation District (the District) consists of two distinct components—a "capacity fee" and a "use fee"—and that the latter is an unlawful tax. The trial court sustained the District's demurrer without leave to amend, agreeing with the District that the action is untimely. For the purposes of this appeal, the parties agree that, at least in principle, different statutes of limitations govern challenges to the capacity-fee and use-fee components of the sewer service charge, and that a challenge to the capacity fee is now time-barred. Although the operative complaint expressly does not attack the capacity fee, the District argues that the ordinances authorizing the sewer service charge are inseverable, so the court would have to invalidate the

1

entire charge if plaintiffs prevail. If the only available remedy would invalidate the capacity fee along with the use fee, the District reasons, the lawsuit is untimely even though plaintiffs' claim challenges only the latter.

We are not persuaded. As discussed below, to identify the applicable statute of limitations, we must look to the gravamen of plaintiffs' claim. The purpose of the severability doctrine is simply to determine the scope of the remedy after a legal infirmity in the ordinance has been established; a finding of inseverability would not alter the nature of plaintiffs' claim or the rights upon which they sue. Thus, even if the District were correct that severability principles would require the invalidation of the entire sewer service charge—an issue we do not decide—we conclude that the District, rather than plaintiffs, would bear the consequence of its decision to draft the ordinances that way. Accordingly, we reverse and remand to the trial court for further proceedings.

## BACKGROUND

The District operates a wastewater utility through which it provides wastewater collection and treatment services to its residents.[1] Plaintiffs own condominium units located within the District's jurisdiction.

As alleged in plaintiffs' original complaint, the District has imposed an annual sewer service charge of "1.0 Equivalent Dwelling Unit" (EDU) on townhomes and condominiums since at least 1975, despite failing to demonstrate a "direct and reasonable correlation" between the charge and the actual costs of providing services to townhomes and condominiums. According to the complaint, failing to demonstrate such a correlation converts the charge into an illegally collected special tax in violation of Proposition 13,

---

[1] The operative complaint names the District as the defendant but identifies Napa County as the real party in interest.

2

62, and 218.[2] The complaint further alleged that the service charge is an illegal tax because it was not approved by two-thirds of voters, as required by the California Constitution. Plaintiffs sought a refund of the service charges paid and injunctive and declaratory relief to preclude future collection of the charges.

After the trial court sustained the District's demurrers to the first two iterations of the complaint with leave to amend, plaintiffs filed a second amended complaint, again asserting that the sewer service charge constitutes an illegal tax. The District demurred, arguing in part that plaintiffs' declaratory and injunctive relief claim was subject to the 120-day limitations period under Government Code section 66022[3] because the second amended complaint alleged that a portion of the service charge is for costs related to "capital improvements." Section 66022 provides that "[a]ny judicial action or proceeding to attack, review, set aside, void, or annul an ordinance" adopting or modifying a capacity charge subject to section 66013 "shall be commenced within 120 days of the effective date of the ordinance . . . ." (Gov. Code, § 66022, subd. (a).) Because section 66013 defines a "capacity charge" as "a charge for public facilities in existence at the time a charge is imposed or charges for new public facilities to be acquired or constructed in the future that are of proportional benefit to the person or property being charged," the District argued that the reference to capital improvements brought the charge within this definition. In response, plaintiffs contended that they were not challenging the capacity-fee portion of the sewer service charge, and argued that their claim against the use-fee portion should not be subject to

---

[2] Later iterations of the complaint allege that the charge also violates Proposition 26 as an illegal tax.

[3] All further references are to the Government Code, unless otherwise indicated.

the shorter statute of limitations applicable to challenges to capacity fees simply because the District chose to collect capacity fees and use fees simultaneously in a single hybrid fee.

Observing that the prayer for relief in the second amended complaint sought the invalidation of the entire sewer service charge, the trial court found that the 120-day statute of limitations set forth in section 66022 barred plaintiffs' claim for declaratory and injunctive relief because more than 120 days had passed since 2010, the year the second amended complaint alleged the District last set the sewer service charge at 1.0 EDU. For that reason, it sustained the District's demurrer to that claim but granted plaintiffs leave to amend.

Plaintiffs then filed a third amended complaint (TAC) asserting a single cause of action for declaratory and injunctive relief. It alleges that the sewer service charges are collected "to pay for the cost of providing wastewater collection, treatment and disposal services, but are mixed with elements relating to capital improvements." The sewer service charge thus has "two identifiable and ascertainable components—a use fee (for general operations, general revenue purposes and other non-capacity related purposes . . . .) and a capacity fee (for maintenance and improvement of capital facilities, among other things . . .)." According to the TAC, the two fees are imposed through a single collected service charge, but plaintiffs challenge only the use-fee portion of it. The TAC alleges that the use fee is an invalid tax because it exceeds the reasonable cost of providing the service for which it is charged, the District has not justified the fee with a nexus study, and the fee has not been approved by two-thirds of voters. Plaintiffs seek a declaration that the use-fee portion of the service charge imposed by the District is unconstitutional or otherwise illegal, and an injunction

4

enjoining the District from further imposing or collecting the use-fee portion of the service charge.

The District again demurred. Requesting judicial notice of the original pair of ordinances authorizing the service charge, adopted in 1977 by the District's board of directors, the District argued that an invalid part of an ordinance can be severed from the remainder only if it is "grammatically, functionally and volitionally separable[,]" and that the use-fee component of the service charge did not meet those requirements. Therefore, according to the District, plaintiffs' claim necessarily challenged the capacity fee, bringing it within the 120-day statute of limitations in section 66022.

The trial court sustained the District's demurrer to the TAC without leave to amend. It first inferred from the allegations in the TAC that the text of the current ordinance did not differ in any meaningful way from that in the earlier ordinances, and it concluded that the earlier ordinances were therefore relevant to the demurrer. It also agreed with the District that the use-fee and capacity-fee components of the sewer service charge were inseverable, and therefore that plaintiffs' attack on the use-fee portion of the ordinance would necessarily invalidate the entire sewer service charge, including the capacity fee. As a result, the court concluded that the 120-day limitations period in section 66022 applied to bar plaintiffs' attack on part of the service charge.

Plaintiffs appealed from the resulting judgment.

## DISCUSSION

"This appeal follows the sustaining of a demurrer. The application of the statute of limitations on undisputed facts is a purely legal question [citation]; accordingly, we review the lower courts' rulings de novo. We must take the allegations of the operative complaint as true and consider whether

5

the facts alleged establish [plaintiff's] claim is barred as a matter of law." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) " ' " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar ... to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " ' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232.)

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22 (*Hensler*).) " '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.' " (*Id.* at p. 23.) "What is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1207.)

Relying on *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809 (*Howard Jarvis*), plaintiffs contend that, because their claim is based on alleged violations of Propositions 13, 26, 62, and 218, it is subject to the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (a), for liability created by statute, and that it runs anew each month when the District collects the allegedly illegal tax. In *Howard Jarvis*, taxpayers brought an action against the city for declaratory relief from a utility users tax imposed without the voter approval mandated by Proposition 62. (*Id.* at pp. 812–814.) The court concluded that the continuous accrual doctrine applied to the plaintiffs' claim because Proposition 62 precludes not only the enactment of a tax ordinance without

6

voter approval, but also continued imposition or collection of such a tax. (*Id.* at pp. 818–821, 824.) Accordingly, the court held that where the statute of limitations in Code of Civil Procedure section 338, subdivision (a) applies, "and no other statute or constitutional rule provides differently, the validity of a tax measure may be challenged within the statutory period after any collection of the tax, regardless of whether more than three years have passed since the tax measure was adopted." (*Id.* at p. 825.)

The District does not argue against a conclusion that plaintiffs' claim would be subject to the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (a) and timely under *Howard Jarvis* if the ordinances were severable.[4] As alleged in the TAC, the District's collection of a use fee that exceeds the reasonable costs of providing its services violates plaintiffs' primary rights under the relevant tax propositions because it was not approved by the voters. (Cal. Const., art. XIII C, § 1, subd. (e)(1) [a charge imposed for services provided to the payor is a tax if it exceeds the

---

[4] In *KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, the defendant argued that any rate increase that includes a charge for capital improvements is a capacity charge under section 66013, but the court declined to decide that issue because it found that the defendant had failed to prove that the rate increase did include funding for capital projects. (*Id.* at p. 1032.) In that case, however, the plaintiffs were challenging the entire rate increase. (*Id.* at pp. 1025–1026.) We note here that the District has not offered any argument, other than the claimed inseverability of the authorizing ordinances, for treating plaintiffs' claim in the TAC as an attack on the entire sewer service charge, nor has it offered any other basis for treating the claim as one subject to section 66022. (Cf. *Webb v. City of Riverside* (2018) 23 Cal.App.5th 244, 256–257 [amendments to petition were a "sham" to plead around the statute of limitations].) We also point out that, because the parties have all treated the capacity-fee portion of the sewer service charge as a "capacity charge" under section 66013, we have had no occasion to resolve a dispute about that issue and nothing in this opinion should be construed as necessarily endorsing the parties' position.

reasonable costs of providing the service]; Cal. Const., art. XIII A, § 4 [special taxes must be approved by two-thirds of the qualified electors]; see also *Howard Jarvis, supra*, 25 Cal.4th at p. 819 [finding that plaintiffs were "seeking redress for two types of injury: the violation of their right to vote on new taxes, and the City's continued collection of the tax without legal authority," italics omitted].)  The question, then, is whether the putative inseverability of the ordinances authorizing the sewer service charge alters the gravamen of plaintiffs' claim or the "nature of the right sued upon" (*Hensler*, *supra*, 8 Cal.4th at p. 23) such as to transform the claim into one subject to the 120-day statute of limitations in section 66022.  We think the answer is no.  Regardless of whether the ordinances authorizing the charge are severable, the TAC does not allege any wrongful conduct by the District with respect to the capacity fee, the invasion of any right or interest plaintiffs possess related to the capacity fee, or any legal injury from the capacity fee. It does not concern the capacity fee at all, and there is no contention that the use fee plaintiffs do challenge is covered by section 66013.  (Cf. *Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1192–1193 [section 66022 applied where plaintiff sought to recoup fees that were "described in and subject to" section 66013].)

The severability or inseverability of an ordinance simply determines the scope of the remedy *after* a legal infirmity has been established.  For example, in *County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, the plaintiff alleged that the county's "biosolids impact fee" violated the prohibition in Vehicle Code section 9400.8 against local fees for the privilege of using roads.  (*Id.* at pp. 1557–1558.)  After examining how the fee was calculated and how the funds it generated could be applied, the court determined that it was, at least in part, a fee imposed on road use and

8

therefore in violation of the statute. (*Id.* at pp. 1622–1623.) Only then did the court consider "what relief is appropriate when an ordinance imposes a fee for more than one purpose and one of the purposes conflicts with a statute and other purposes do not." (*Id.* at p. 1623.) The court first rejected the possibility that the existence of some potentially valid uses of the funds would warrant upholding the entire fee, because "such a remedy would allow public agencies to adopt fees with illegal purposes and save those fees from invalidation by appending one valid purpose for which the fees could be used." (*Ibid.*) Conversely, the court concluded that it would be "unduly harsh" to invalidate the entire fee when part of the funds would be used for valid purposes and the formula by which it was calculated did not itself run afoul of a statutory prohibition. (*Ibid.*) Finally, the court noted that the ordinance contained a severability clause and that the rate used to determine the fee and funds it generated were inherently divisible; it therefore invalidated the fee only "to the extent it was or will be used for purposes that violated Vehicle Code section 9400.8." (*Id.* at p. 1624.)[5] This discussion of remedy, however, has no bearing on the nature or gravamen of the plaintiff's claim, which would have been the same even if the court had found that the proper remedy was to strike the biosolids impact fee in its entirety.

The test for severability effectively allows a legislative body to decide, at the time of drafting, whether the remainder of its law will survive a later judicial determination that some aspect of it is invalid. By including a severability clause, for example, the legislative body will receive "a

---

[5] Although plaintiffs do not cite *County Sanitation Dist. No. 2 v. County of Kern, supra,* 127 Cal.App.4th 1544, they argue that the District is legally required to separate the use-fee and capacity-fee components of the sewer service charge, that the District uses the two fees for different purposes, and that the court could fashion relief that impacts only the use fee.

presumption in favor of severance." (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 270.) The additional criteria that courts examine—whether the invalid provision is "grammatically, functionally, and volitionally separable" (*ibid.*)—are likewise matters within the legislative body's power to address during the drafting and legislative process. Indeed, volitional separability refers to whether, "knowing that only part of its enactment would be valid, [the legislature] would have preferred that part to nothing, or would instead have declined to enact the valid without the invalid." (*Id.* at p. 273.) Of course, a legislative body will not always prefer severability. But because the doctrine is rooted in legislative choice, when a legislature drafts a law in such a way that a court will conclude it is inseverable, it has at least assumed the risk that all of its law will fall if a court determines that any part of it is invalid. (See *In re Blaney* (1947) 30 Cal.2d 643, 655 ["if the statute is not severable, then the void part taints the remainder and the whole becomes a nullity"].) We see no reason why that risk does not include the potential loss of a shorter statute of limitations that would apply to some aspect of the law if it had been drafted in such a way that it could be severed from the remainder, at least in the absence of some other basis for allowing the shorter statute of limitations to control.[6]

---

[6] We are not unmindful of the policy underlying the short statute of limitations in section 66022—"so that local agencies can make spending decisions confident in the knowledge that they are spending funds that are, in fact, available." (*Util. Cost Management v. E. Bay Mun. Util. Dist.* (2000) 79 Cal.App.4th 1242, 1252.) But it remains within the power of local agencies to secure that benefit by drafting legislation in such a way that funding for capital projects is not imperiled by an unrelated challenge to some other aspect of the law. And again, because the District's argument is limited to the severability doctrine, we do not consider here any other potential grounds for applying section 66022 to plaintiffs' claim.

10

Moreover, courts have held that the nature of the relief the plaintiff seeks does not determine the gravamen of the claim. (*Hensler*, *supra*, 8 Cal.4th at p. 23; *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 214; *Golden Gate Hill Development Co., Inc. v. County of Alameda* (2015) 242 Cal.App.4th 760, 768 [relief sought by plaintiff—a refund of taxes paid rather than invalidation of the tax measure—did not change gravamen of claim, which was based on alleged illegality of taxes enacted by county].) We think the same is true when, as here, the defendant argues that the application of a severability analysis would require the court to award relief broader than the plaintiff seeks. (Cf. *People ex rel. Department of Conservation v. Triplett* (1996) 48 Cal.App.4th 233, 249 [gravamen of the action was to compel Assessor to assess resort parcel in manner required by the Williamson Act, even if it might force the abandonment of the cancellation petition].) That result is a function of the legislative body's drafting decision, not a function of the plaintiff's claim.

Our research has revealed, and the parties have identified, no cases in which severability was used to determine the applicable statute of limitations, and we have identified only a few federal cases in which severability was even examined prior to any consideration of the merits of the claim of invalidity. In those cases, the court conducted a threshold examination of severability in order to determine whether the plaintiffs possessed standing under Article III of the U.S. Constitution—specifically, to determine whether a remedy was available that would redress the claimed injury. (See, e.g., *INS v. Chadha* (1983) 462 U.S. 919, 931–935 (*Chadha*); *Gentry v. United States* (Ct. Cl. 1976) 546 F.2d 343, 347; *Doe v. Wilson* (N.D.Cal., Dec. 15, 1997, No. C 97-2427 SI) 1997 U.S.Dist. Lexis 21137, at pp. *18–*21; but see, e.g., *Mejia v. Time Warner Cable, Inc.* (S.D.N.Y., Aug. 1,

11

2017, No. 15-CV-6445 (JPO)) 2017 U.S.Dist. Lexis 120445, at p. *38 ["Severability is a question of remedy, to be addressed once a constitutional violation has been identified. It is not a threshold issue implicating a party's standing to challenge constitutionality in the first instance"].)[7] In essence these cases involved challenges to a statutory restriction on a benefit conferred by the statute itself; if the statute was inseverable, then the successful challenge would eliminate the benefit along with the restriction, leaving the plaintiffs no better off.[8] But severability was examined first in those cases because it was essential to determining whether the court possessed jurisdiction. (See *Gentry v. United States*, *supra*, 546 F.2d at p. 347 ["Because of the nature of this court's jurisdiction, we must depart from the

---

[7] We may cite unpublished federal cases without violating the California Rules of Court. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18; *Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1501, fn. 2.)

[8] *Chadha* involved a challenge to the constitutionality of a provision that allowed one house of Congress to invalidate a decision by the United States Attorney General to allow a particular deportable alien to remain in the country. (*Chadha, supra*, 462 U.S. at p. 923.) The Attorney General had recommended that Chadha's deportation be suspended, but the House of Representatives vetoed the recommendation. (*Id.* at pp. 924–927.) The Senate and House of Representatives, which were permitted to participate as amici because the Immigration and Naturalization Service supported Chadha's position in the litigation, argued that Chadha lacked standing because a determination that the one-House veto provision was unconstitutional would require the invalidation of the entire statute, including the provision that authorized the Attorney General to allow Chadha to remain in the United States—meaning Chadha would receive no relief from deportation if he prevailed in his constitutional challenge. (*Id.* at p. 931.) The court stated that it found it "appropriate" to address questions of severability first, while acknowledging that doing so was a departure from its usual practice, and it ultimately concluded that the one-House veto was severable. (*Id.* at pp. 931, fn. 7, 935.)

12

usual practice of inquiring first into constitutionality and then into severability, and instead consider the latter first"]; cf. *Petrella v. Brownback* (10th Cir. 2012) 697 F.3d 1285, 1296 [district court erred by considering severability at early stage of litigation when not necessary to establish standing].) No such issue is presented here, and there is no need to examine the severability of the authorizing ordinances to determine the gravamen of plaintiffs' claim or the rights upon which they sue. The severability doctrine is a shield by which a legislative body can preserve the parts of its law that are not implicated by a valid legal claim, not a sword to wield against that claim in the first place.

We emphasize that we do not decide severability here. Since it was premature for the trial court to adjudicate that issue, we leave open the possibility that it could later determine that it is possible to fashion relief impacting only the use-fee component of the sewer service charge. We conclude only that the District has not established that plaintiffs' challenge to the use fee must be dismissed as untimely based on the claimed inseverability of the ordinances authorizing the charge.

## DISPOSITION

The judgment of dismissal is reversed. On remand, the trial court shall vacate its order sustaining the District's demurrer without leave to amend and enter a new order overruling the demurrer. Plaintiffs are awarded costs on appeal.

GOLDMAN, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

13

Trial Court:                          Napa County Superior Court

Trial Judge:                          Victoria Wood

Counsel for Plaintiffs and            LAW OFFICES OF GEOFFREY WILLIS
Appellants:                           Geoffrey Willis

Counsel for Defendants and            MEYERS NAVE
Respondents and Real Party in         John Bakker
Interest:                             Jenny L. Riggs
                                      Kenneth W. Pritikin