This pro se civilian pay case is before the court on the parties’ cross-motions for summary judgment, without oral argument. The plaintiffs James E. Brown (Brown) and Ronald H. Davis (Davis) both seek Living Quarters Al *711 lowances (LQA) pursuant to regulations promulgated under the Overseas Differential and Allowances Act, 5 U.S.C. § 5921 (1970) et seq.; the parties present common questions of law in regard to certain aspects of these claims. Brown also presents two additional claims: (1) that he is entitled to separation travel from Germany to the United States under a 36-month travel agreement granted to him pursuant to regulations under 5 U.S.C. § 5722 (1970) in addition to permanent "change-of-station” allowances granted to him under a 12-month travel agreement; and (2) that he is entitled to back pay and a removal of an improper charge to his leave account resulting from his being improperly placed on leave without pay (LWOP) status, pursuant to the Back Pay Act, 5 U.S.C. § 5596 (1970).
I
The facts pertaining to Brown’s entitlement to both LQA and travel allowances are as follows: Brown was hired by Raytheon Service Company on January 16, 1967, while he was in Germany; he was assigned to the company’s facility in Roedelheim, Germany, until July 19, 1970. Pursuant to company instructions he departed from Frankfurt, Germany, on September 14, 1970, to report to Seoul, Korea, on a new job assignment. On October 27, 1970, however, he resigned from his job; his expenses for returning to Frankfurt, Germany, were incurred by Raytheon pursuant to his employment contract; the contract did not provide for the payment of expenses to return to the United States, nor were the travel expenses of his family covered by the contract.
On or about May 7, 1971, he was hired as a GS-5 accounting technician on an intermittent basis in Frankfurt, Germany. He was promoted to Administrative Assistant, GS-7, effective August 8, 1971, and transferred to Worms, Germany. While still in Frankfurt, during the personnel processing incident to the change in station, he executed on August 5, 1971, a 36-month travel agreement granting travel and transportation expenses for him and his family back to his "place of actual residence” after the completion of 36 months of service overseas; he listed his "place of actual residence” at the time of his appointment as Lewisburg, Tennessee. An employee whose "actual place of residence” was determined to be outside the overseas geographical area was usually also entitled to a LQA. *712 However, the Worms Area Civilian Personnel Office (WACPO) subsequently notified Brown that he was not entitled to a LQA or a 36-month transportation agreement granting separation travel to the United States; however, the WACPO did decide he was entitled to a 12-month agreement for permanent change-of-station allowances, with his place of actual residence at the time of appointment as Lewisburg, Tennessee.
Brown then filed a grievance; the United States Army Civilian Appellate Review Office (USACARO) found that Brown was not eligible for a LQA or separation travel to the United States under the 36-month agreement; it concluded that Brown was entitled to only a 12-month transportation agreement conferring permanent change-of-station allowances, but with Brown’s place of actual residence at the time of appointment as Frankfurt, Germany. The General Accounting Office sustained this determination in its Settlement Certificate of July 13, 1974, in its decision B-182226, dated January 27, 1975, affirming the settlement, and in its decision B-182226, dated April 21, 1976, on Brown’s request for review and reconsideration of the prior decision. Brown now seeks before this court the LQA and travel allowances withdrawn (in the text infra we frequently refer only to the 36-month transportation agreement and not the 12-month agreement with residence in the United States, which was negotiated the same day the former was withdrawn; however, Brown’s petition is ambiguous and he may be claiming both; we make no decision on this point by merely referring to one).
II
Brown argues that, once the LQA and the transportation agreements had been allowed by an agent of the Government, they could not be retracted without court intervention, citing United States v. Bank of Metropolis, 40 U.S. 240, 255-56, 15 Pet. 377, 401 (1841). That old decision— holding that a successor Postmaster General could not by himself overturn his predecessor’s granting to a contractor of "acceptances” representing money due the contractor, which "acceptances” were normally discounted by banks— was based upon a special statute relating to the Post Office Department and on the financial practices surrounding those "acceptances.” It is wholly inapplicable to the present situation of lower-level determinations of monies due to federal personnel.
*713 Neither is Noble v. Union River Logging Railroad Co., 147 U.S. 165 (1893), in point. There the incumbent Secretary of the Interior attempted to revoke a grant of land made by his predecessor in office to the railroad company; however, once the title to the land had been passed, the land was no longer the property of the Government, and the Secretary could not revoke the action of his predecessor except by a court proceeding. No such property rights appear in the present case.
Brown also raises a welter of arguments attacking the grounds of the initial decisions depriving him of the LQA and separation travel to the United States and argues that a court may sustain an agency’s decision only on the specific grounds invoked by the agency. However, the cases he cites (SEC v. Chenery Corp., 318 U.S. 80, 88 (1943), and comparable decisions) deal with agency decisions rested on an exercise of discretion within "the domain which Congress has set aside exclusively for the administrative agency.” Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 169 (1962); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). That consideration does not govern here. All that is involved in the present claims are questions of fact and interpretation of statutes and regulations clearly within the competency of the courts; there is no special expertise or discretion or fact-finding function which has been reserved to a designated agency. Indeed, this court has held a trial and made determinations of a claimant’s entitlement to a LQA provided under one of the regulations in issue here. See Trifunovich v. United States, 196 Ct. Cl. 301 (1971). The question is not whether an administrative determination was permissible but whether either plaintiff qualifies for the allowances claimed under the applicable statutes and regulations.
Ill
It is clear from the undisputed facts that Brown is not entitled to a LQA. The Department of State Standardized Regulation (DSSR) § 031.12 provided at the time (in pertinent part):
Quarters allowances . . . may be granted to employees recruited outside the United States, provided that:
a. the employee’s actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributable to his employment by the United States Government, and ....
*714 c. prior to appointment, the employee was recruited in the United States, the Commonwealth of Puerto Rico, the Canal Zone, or a possession of the United States, by:
(1) the United States Government, including its Armed Forces;
(2) a United States firm, organization, or interest;
and had been in substantially continuous employment by such employer under conditions which provided for his return transportation to the United States, the Commonwealth of Puerto Rico, the Canal Zone, or a possession of the United States.
Before his appointment to a GS-7 position, he had not been recruited as an intermittent employee by the Government in the United States, nor was he entitled to any return transportation thereto. Even if he had been so recruited by Raytheon and entitled to such transportation (which he was not), he had not been "in substantially continuous employment,” as he had been unemployed for some six months prior to working on an intermittent basis for the Government. The Army was entitled to correct its erroneous determination. Sec Scharaga v. United States, 209 Ct. Cl. 728 (1976) (Government entitled to recover travel reimbursements erroneously made by the Government’s agents to the plaintiff contrary to applicable regulations). Summary judgment is granted to the defendant on this claim.
IV
It is not possible to decide on motion for summary judgment whether Brown is entitled to separation travel allowances to the United States. The defendant urges that administrative decisions should not be reversed absent a clear showing of legal error and asserts that there was substantial evidence to sustain the USACARO examiner’s conclusion that Brown’s "place of actual residence” was not Tennessee; the examiner had noted that Brown had resided on an almost continuous basis at #102 Frieden Strasse, Offenbach, Germany from June 1964 until the Worms assignment and that his wife had been born in Offenbach. To qualify for separation travel allowances to the United States under the regulations, it was necessary to show that one’s place of residence at the time of appointment was in *715 the United States.[1] Brown contends that he lived at that particular address only from June 1964 until February 1967, that all his personal property was in Tennessee at the time of his appointment, and that he was a registered voter in good standing in Marshall County, Tennessee, at the time.[2]
Although there is substantial evidence to support the administrative decisions, the claim must be remanded to the Trial Division for further proceedings, since there is a clear issue of fact.[3] In Trifunovich, supra, 196 Ct. Cl. at 311, concerning a claim for a LQA under DSSR § 031.12(d.), it was held that the plaintiffs right to recover did not flow "from a showing of any abuse of discretion, arbitrariness, or capriciousness, but from proof of deprivation of statutory and regulatory rights on an invalid basis.” Brown is entitled to an opportunity to establish his rights (under the applicable statutes and regulations) to the separation *716 travel allowance; therefore, the claim is remanded to the Trial Division.
V
Brown’s third claim for back pay and a correction of his leave records arose from an attempt of the Army to terminate his employment.[4] On December 12, 1972, the WACPO notified Brown that he would be terminated without cause or prejudice effective January 15, 1973. Brown took approved annual leave from approximately December 17, 1972, through January 15, 1973, in the United States. On January 11, 1973, he requested by letter that he be returned to duty, since his removal was procedurally defective; he gave as a forwarding address: Route 5, Box 152-A, Lewisburg, Tennessee.[5] On January 23, 1973, the WACPO sent a registered letter to the specified address notifying him that the termination action had been cancelled and that he had five working days to return to his duty station; that registered letter, return receipt requested, was signed for by a Ms. Diane Allen on January 26, 1973. On February 5, 1973, Brown (who claims that he did not receive notice of the restoration order until that day) telephoned the WACPO and told them that he could not return in five working days. He requested Government transportation back to Germany and was in Washington, D.C., purportedly trying to obtain a Government travel allowance, from February 7, 1973 to February 13, 1973. Arriving at Frankfurt, Germany, on February 16, 1973, he reported for duty at Worms on February 21, 1973.
He alleges that on February 23, 1973,[6] he was informed verbally by the WACPO that he would be carried on a leave without pay (LWOP) status from January 29, 1973, through February 15, 1973; he requested this in writing, but was told that the information would be furnished by the U.S. Army Central Finance and Accounting Office, Europe; by letter dated March 7, 1973, he informed the *717 Civil Service Commission’s Appeals Examining Office that he would appeal the LWOP status upon receipt of the documents required under 5 U.S.C. § 7501 (1970); after several telephone calls and a letter to the Finance and Accounting Office, with no result, he learned from that office on or about May 24, 1973 by telephone that the WACPO had placed him on LWOP status.
He appealed to the Civil Service Commission Appeals Examining Office by letter dated June 4, 1973. That office held that the appeal was untimely under 5 C.F.R. § 752.204 (1973), which provides in pertinent part:
(a) [A]n employee may submit an appeal at any time after receipt of the notice of adverse decision but not later than 15 days after the adverse action has been effected.
(b) The Commission or the agency, as appropriate, may extend the time limit on appeal to it when the appellant shows that he was not notified of the time limit and was not otherwise aware of it, or that he was prevented by circumstances beyond his control from appealing within the time limit.
The office decided that, since he had been informed of the LWOP status on February 20, 1973, he had to appeal within 15 days thereafter; he was aware of the time limit because of his numerous visits to that office and three prior appeals filed with them and extensive correspondence of his concerning various appeals. He appealed this determination by letter dated July 2, 1973 to the Board of Appeals and Review, which on September 10, 1973, sustained the decision of the Appeals Examining Office. The defendant now asserts that Brown’s claims for back pay and a correction of his leave account for the LWOP period is barred by a failure to exhaust administrative remedies.
We hold that the Civil Service Commission abused its discretion in not granting Brown an opportunity to appeal under the circumstances. 5 C.F.R. § 752.204 (1973) specifically provides for an extension of the time limit if a party is prevented from appealing within the time limit by circumstances beyond his control. 5 U.S.C. § 7501 (1970) and 5 C.F.R. § 752.202(f) (1973) entitle an employee to written notice of the adverse decision and the grounds on which it is sustained. 5 C.F.R. § 752.204(a) (1973) provides that an appeal may be submitted after receipt of the notice of adverse action. Strictly speaking, Brown could never come within the literal time limit provided by the regulation *718 without the receipt of the written notice as specified in 5 C.F.R. § 752.202 (1973).[7]
We have held that, when a party has not been notified of his appeal rights, it is within the discretion of this court to take jurisdiction notwithstanding a technical failure to exhaust administrative remedies. Gentry v. United States, 212 Ct. Cl. 1, 11, 546 F.2d 343, 348 (1976); Grover v. United States, 200 Ct. Cl. 337, 346 (1973). Even if it were to be assumed, arguendo, that Brown’s appeal were untimely,[8] we should have to hold that "unusual circumstances” exist which justify allowing him to present his claim before this court; such circumstances have been found to exist when information concerning an employee’s right to appeal was withheld or his procedural rights were affirmatively misrepresented. Shubinsky v. United States, 203 Ct. Cl. 199, 204, 488 F.2d 1003, 1006 (1973). Brown was entitled under the applicable statute and regulations to a specification of the charges and their grounds; he apparently tried to obtain such documentation several times. The very purpose of such information is to allow him to prepare an appeal. We therefore hold that he is not barred by failure to exhaust his administrative remedies from presenting his LWOP claim here.
Brown is entitled to recover back pay and to have his leave account corrected pursuant to 5 U.S.C. § 5596 (1976), if his suspension was "unjustified and unwarranted” and he was "ready, willing and able” to work during the period that he was on LWOP status. See Seebach v. United States, 182 Ct. Cl. 342, 348, 352 (1968); Kleinfelter v. United States, 162 Ct. Cl. 88, 92, 318 F.2d 929, 931 (1963). It is not clear when Brown received effective notification of the revoca *719 tion of the termination of his position or when he would have been able to return to work using due diligence after receiving that notification. To the extent the LWOP period was extended for his accommodation and convenience, he is of course not entitled to recover. This claim therefore must be remanded to the Trial Division for further proceedings to determine the measure of his recovery, if any.
VI
The facts underlying the claim of the other plaintiff, Davis, to a LQA are in some respects analogous to, though completely independent of, Brown’s claim to a LQA. Davis had travelled to Germany in December of 1963 at his own expense; he soon obtained employment at the United States Armed Forces Institute, which terminated on August 31, 1964. He had no rights to return transportation to the United States arising from that employment. On October 16, 1964, he was appointed to a position in the Department of Defense School System and was granted a LQA; on June 28, 1968, he was notified that he was ineligible under the regulations. We reject any claims of the plaintiff that the initial determination of eligibility vested him with any rights that could only be rescinded by means of court action or that the rescission action could be affirmed only on the basis given by the agency for the same reasons that we rejected like contentions in Brown’s LQA claim.[9] (Part II supra).
The Army apparently withdrew its prior determination of Davis’ eligibility for a LQA on the ground that he had not been recruited in the United States with provision for return transportation, as required under DSSR § 031.12(c.) (effective October 13, 1963).[10] However, the plaintiff points to DSSR § 031.12(d.), which granted a LQA to employees *720 recruited outside the United States, provided that: the employee was temporarily in the foreign area for travel or formal study and immediately prior to such travel or study had resided in the United States, the Commonwealth of Puerto Rico, the Canal Zone, or a possession of the United States.
Davis argues that:
The record shows that Mr. Davis arrived in Europe from his place of actual residence in the United States in December 1973 [presumably 1963] for travel of an indefinite duration. Mr. Davis’ resources were limited; therefore, he intended to sustain himself by working occasionally while continuing his travels. After a period of two months, Mr. Davis obtained temporary employment with the United States Armed Forces Institute as a mail clerk .... Mr. Davis continued his travels until October 16, 1964, when he was appointed to a position with the Department of Defense’s Overseas School System. .
There is a clear issue of fact;[11] this claim must be remanded to the Trial Division for further proceedings. Since Davis’ LQA claim has at this juncture no issues of fact or law in common with any of Brown’s claims which remain before this court, we grant the defendant’s motion[14] *721 for severance of the Davis’ claim from Brown’s claims pursuant to Rule 64 in connection with further proceedings before the Trial Division.[15]
.. IT IS THEREFORE \ ORDERED AND \ CONCLUDED that the defendant's motion for \summary judgment\is granted in respect to Brown’s claim for a LQA and that portion of the plaintiffs’ petition is dismissed with prejudice, that the defendant’s motion for severance of Davis’ claim for a LQA is granted, and that that claim and Brown’s claims for a travel allowance and back pay with corresponding record corrections are remanded to the Trial Division for further proceedings in accordance with this order.
Plaintiffs’ motion for reconsideration and amendment of the foregoing order was denied September 29, 1978.
Plaintiffs’ petition for writ of certiorari was denied, 440 U.S. 948 (1979).

 JTR C 4002(3)(b.)(l) provides:
Bona Fide Residence in the United States. To be eligible to negotiate an agreement, the employee must be able, at the time of appointment or assignment, to establish to the satisfaction of the appointing official, bona fide place of actual residence (see par. C 4004) in the United States but outside the geographical locality of the post of duty.
The plaintiffs in their motion for summary judgment contend that Brown’s place of actual residence "is not material to plaintiffs’ right to recover.” However, under Joint Travel Regulation (JTR) 4004(2.)(a.), the "place of actual residence” must be determined by the employment officer, since the travel agreements only cover movement to and from the "place of actual residence” at the time of assignment to overseas duty.

 The WACPO apparently did not retract the 36-month travel agreement providing separation travel to the United States on the basis that his residence was not in Tennessee.
The WACPO representative who decided that the plaintiff was not qualified for the separation travel agreement had the plaintiff execute a 12-month travel agreement entitling the plaintiff to permanent change-of-station allowances on the same date, August 9, 1971, that he concluded the plaintiff was not entitled to the former agreement. The latter agreement also listed Brown’s place of residence as Tennessee.

 The plaintiff urges that the defendant is collaterally estopped by a 1975 decision of the United States District Court for the Middle District of Tennessee (No. BK 71-27-C) holding that Brown’s place of actual residence was Lewisburg, Tennessee; however, it has not been shown by the plaintiff that the defendant was an actual party or "in privity” with any of the parties to the suit; neither is it known in what context the district court made its determination of "residency.” The defendant clearly is not bound by any results in that suit, if the issues in that suit are not identical to those here or if it was not a party to or "in privity” with a party to the prior action. See Commissioner v. Sunnen, 333 U.S. 591, 597-602 (1948); Cromwell v. County of Sac, 94 U.S. 351, 353 (1876); McGhee v. United States, 194 Ct. Cl. 86, 93-94, 437 F.2d 995, 999-1000 (1971). Since the plaintiff has made no such showing, we cannot hold the defendant estopped on this issue by that case. Neither is the defendant estopped by anything in Civil Action No. 77-1396, District of Columbia District Court, in which the United States is apparently a party, without a further showing by the plaintiff that a judgment has been reached on the precise issue involved in the case before this court.

 Brown asserts that the Army terminated his position illegally three times because of racial prejudice and the extensive litigation he has carried on in connection with the transportation agreement in issue here; however, the only claim before this court in this regard is the one for back pay and a correction of his leave records resulting from this one cancelled termination of his employment.

 This is the same address he gave on the 36-month travel agreement in issue in Part IV supra.

 The record shows discrepancies in regard to this date. Before the Civil Service Commission he stated that he was informed of the LWOP status on February 20, 1973, while he gives the February 23, 1973 date in his petition before this court.

 The time limit provided in 5 C.F.R. § 752.204(a) (1973) is more comprehensible when it is noted that 5 C.F.R. § 752.202 (1973) provides for at least 30 full days' advance written notice of proposed adverse actions under normal circumstances (5 C.F.R. § 752.202(a) (1973)) and in addition written notice "at the earliest practicable date” of an adverse decision (5 C.F.R. § 752.202(f) (1973)).

 Brown noted in his appeal to the Board of Appeals and Review (and claims here) that he had told the Appeals Examining Office by a letter dated March 7, 1973, that he would appeal when he received documentation on the LWOP action. However, he gave February 20,1973 as the date he received oral notice; the Board did not address the issue of whether the letter might have constituted a timely appeal (in its decision of September 10, 1973). The letter of March 7, 1973, is not before us, though the Appeals Examining Office in its July 2, 1973 decision did mention a letter from Brown of that date concerning a subsequently cancelled reduction-in-force action. Given our disposition of the exhaustion of administrative remedies issue, there is no need to determine whether that letter contained matter constituting a timely appeal on the LWOP issue.

 The General Accounting Office in its decision B-180881, July 12,1976, reviewing its prior holding on Davis’ claim in 54 Comp. Gen. 149 (1974) denying him a LQA, affirmed the prior decision, but granted his request that he be excused from his indebtedness to the United States for the LQA that had been paid him, pursuant to Act of October 2, 1972, Pub. L. No. 92-453, 86 Stat. 758. Accordingly, there is no possible issue of reliance. Cf. Scharaga, supra, 209 Ct. Cl. 728 (Government entitled to recover erroneous payments).

 DSSR § 031.12(c.) in effect as of the time Davis’ claim arose was identical to DSSR § 031.12(c.) in effect as of the time of Brown’s appointment. See Part III supra. DSSR § 031.12(d.) in effect as of the time of Brown’s appointment was completely different from the provision quoted above; it allowed a LQA where an employee was required by the agency to move to another area, if specifically authorized by the head of the agency. Since there was no such authorization, it was inapplicable to Brown.

 In Trifunovich, supra, 196 Ct. Cl. 301, the court found that the plaintiff was entitled to a LQA under DSSR § 031.12(d.) even though he had been absent from the United States for eighteen months.
The Comptroller General in his decision B-180881, dated July 12, 1976, at 5, noted, to show that Davis was not abroad for travel or study, that he had been employed under contract for approximately six months, then sought permanent employment only eleven days after the termination of his contract. Although there is substantial evidence to support that determination, the question here is whether Davis was entitled under the applicable statutes and regulations to the LQA. See Trifunovich, supra, 196 Ct. Cl. at 311.

 The defendant has moved to dismiss Davis’ portion of the petition on the ground that Brown was impermissibly practicing law before this court by ''representing” Davis, even though Brown is not a member of this court’s bar. The defendant asserts this on the grounds that Brown drafted and signed some of the submissions (other than the petition, which was signed by both plaintiffs) on behalf of Davis and designated himself as a representative for Davis. However, we are unwilling to dismiss for such reasons a portion of the petition when pro se plaintiffs are involved, at least when their claims are properly joined. As the plaintiffs correctly point out, there were numerous identical legal contentions raised by them applicable to Davis’ LQA claim and Brown’s LQA and separation travel claims; a favorable holding on those issues would have been dispositive. Therefore, the claims were proper for permissive joinder under Rule 63. Sec Moorehead v. United States, 112 Ct. Cl. 298, 81 F. Supp. 223 (1948). For that reason we have treated both plaintiffs’ claims in this order. However, we do require strict compliance with the rules of this court in regard to the practice of law; the fact that Brown may have represented Davis before various Government agencies does not entitle him to do so here. In any further *721 proceedings before the Trial Division, Davis must proceed pro se or obtain the services of a member of this court’s bar. See Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 654, 428 F.2d 1241, 1244 (1970).
Plaintiffs’ motion to strike a portion of defendant’s cross-motion for summary judgment is also denied, though its contents have been taken into account.

 We note that Davis’ recovery, if any, may possibly be limited by the statute of limitations, 28 U.S.C. § 2501 (1970).