This case is the last stage in protracted litigation between plaintiff James E. Brown and the Government, arising out of his employment by the Army in Germany. As originally filed, this case also involved plaintiff Ronald H. Davis; however, Davis’ claims were severed by our order of June 27, 1978, 217 Ct. Cl. 710, cert. denied, 440 U.S. 948 (1979). That order left only two issues for disposition here: plaintiff Brown’s claims of entitlement to a 36-month travel agreement and to certain back pay. The parties have arrived at a *736 settlement of the back pay dispute, which leaves only the travel agreement as the subject of these cross-motions for summary judgment.
Plaintiff was employed in Government-related work in West Germany almost continuously from 1964. He first worked for the Army in and around Frankfurt until 1967, at which point he went to work for a Government contractor, Raytheon, also in Germany. When Raytheon in 1970 transferred plaintiff to Massachusetts and then to Korea, he resigned the job and returned to the United States for several months. During that time he lived at his parents’ home in Lewisburg, Tennessee.
Plaintiff returned to Germany in May 1971, and shortly thereafter was hired by the Army in Frankfurt. In August of that year he was promoted to a job at Worms, about 40 miles from Frankfurt. During the transfer procedures, plaintiff executed a 36-month travel agreement. This confirmed that, upon plaintiffs completion of the stated period of Government service, the Army would pay his travel expenses, and those of his family and household goods, back to his "place of actual residence,” which he listed as Lewisburg, Tennessee. Once at Worms, however, the personnel office determined that he was only eligible for a 12-month agreement and a superseding travel agreement was executed.
Plaintiff was married in 1963 to a German woman, and they had two children before their divorce in 1973. Plaintiffs wife and children resided continuously in Germany during the period under consideration.
Plaintiff stayed at Worms, with the brief hiatus in early 1973 for which he seeks back pay, until April 1981, when he was transferred to an Army job in Alexandria, Virginia. To our knowledge, he remains in that position to this day. The Army authorized payment of the travel expenses of plaintiff, his children, and his household goods between the Worms duty station and Alexandria.
The Government argues that the travel agreement issue is moot because the Army actually paid plaintiffs expenses from Germany to Alexandria. Plaintiff, representing himself, responds that the payment made was inadequate and that entitlement to certain home and emergency leave is *737 dependent on the travel agreement issue. At the outset we note that these leave issues are not within the purview of this case and cannot be addressed or considered here.
Government payment of an employee’s travel expenses is governed in part by 5 U.S.C. §5722 (1976). Subsection (a) describes one of the payments permitted:
(a) Under such regulations as the President may prescribe and subject to subsections (b) and (c) of this section, an agency may pay from its appropriations—
(1) travel expenses of a new appointee and transportation expenses of his immediate family and his household goods and personal effects from the place of actual residence at the time of appointment to the place of employment outside the continental United States; and
(2) these expenses on the return of an employee from his post of duty outside the continental United States to the place of his actual residence at the time of assignment to duty outside the United States.
(Subsections (b) and (c) impose limitations which are not relevant here.) A travel agreement, DD Form 1617, is by its own terms executed pursuant to section 5722, and section 5722 expressly provides for the execution of the agreement. 5 U.S.C. §5722(b).[1]
As we read section 5722, it is limited to travel at the beginning and end of a tour of duty, and it is limited to travel between the continental United States and overseas duty posts. Taking the first limitation, it means that travel expenses between duty stations-transfers-are not covered by section 5722, nor a fortiori by the travel agreement. Instead, transfers are governed by 5 U.S.C. §5724 (1976), which makes no provision whatever for a travel agreement. A travel agreement’s requirement that the employee remain in federal employment for a certain period of time only makes sense if section 5722 is limited to pre- and post-employment travel.
*738 Plaintiffs move from Worms to Alexandria was a transfer, as he never left Government employment. The move was therefore governed by section 5724 rather than section 5722. This can readily be seen by examination of the travel forms which plaintiff used when he moved from Worms to Alexandria: DD Form 1614, "Request and Authorization for DOD Civilian Permanent Duty Travel.” Form 1614 is obviously not a travel agreement. Furthermore, both section 5724 and Form 1614 discuss temporary storage of goods, per diem allowances, advances, etc., none of which appear in section 5722 or in a travel agreement.
Even if the travel agreement applied to this move, however, plaintiff would be barred by the limitation of section 5722 to "the return of an employee from his post of duty outside the continental United States.” 5 U.S.C. §5722(a)(2) (emphasis supplied). This means that if an employee ends his tour of duty in the continental United States, he must find his own way home. To avoid the Government’s mootness argument, plaintiff alleges entitlement to additional travel expenses from Alexandria to Tennessee. Putting aside ripeness problems and the genuine dispute as to the validity of his Tennessee residence, the statute would not in any case provide for such travel within the continental United States.
For the reasons stated, plaintiff is not entitled to relief under section 5722. The problem is not so much mootness, as the Government argues, but the inapplicability of section 5722. Plaintiff could not be entitled to anything under any travel agreement at this time; consequently, he has failed to state a claim upon which relief can be granted.
it is therefore ordered, without hearing oral argument, that (1) per the parties’ joint stipulation, plaintiff is entitled to $1,000 in back pay and to have 12 hours of leave time credit arising out of the 1973 adverse job action; (2) the claim for entitlement to a 36-month travel agreement is dismissed for failure to state a claim upon which relief can be granted; (3) with this order all of the issues raised in plaintiff Brown’s original petition have been adjudicated; but (4) plaintiff Brown is not hereby barred from pressing a claim he may have (alluded to in his petition) that he was not in fact reimbursed for his 1981 travel expenses from *739 Germany to Alexandria, as authorized by the DD Forms 1614 executed on April 27 and 28,1981, and plaintiff Brown is given 30 days from this date to file any submission with respect to such claim as to which defendant shall have 20 days within which to respond. If plaintiff fails to file such submission, the petition will be dismissed as to such claim and an appropriate order will be entered upon the parties’ cross-motions for summary judgment.
May 7,1982
On March 5, 1982, we issued an order in this case, itself the follow-up to an order entered on June 27, 1978, 217 Ct. Cl. 710, in which we expressly declared that "with this [i.e., the March 5, 1982] order all of the issues raised in plaintiff Brown’s original petition have been adjudicated.” At the same time we invited plaintiff to file a submission in this court relating to travel and moving expenses provided for in two DD Forms 1614 and which he seemed to claim were never actually paid. On April 5, 1982, plaintiff filed several submissions with the court, all of which, contrary to our narrow invitation, attempt to relitigate the general issues decided by our previous orders, as well as introduce new issues. We deal with the submissions in order.
Plaintiff’s first submission is headed "plaintiffs Motion for Leave to Request Reconsideration of the Ripeness Issue Raised and Decided Sua Sponte by the Court in Its Order and Decision of March 5, 1982.” Throughout plaintiffs several submissions, he returns again and again to the ripeness issue which he uses as a vehicle to discuss substantive claims decided by, or outside of the scope of, our orders. In any context, but particularly in a motion for reconsideration, this line of argument is inappropriate because we did not decide any ripeness issue. Our only mention of it in the order of March 5, 1982, is as follows:
Putting aside ripeness problems and the genuine dispute as to the validity of his Tennessee residence, the statute would not in any case provide for such travel within the continental United States. [Emphasis supplied.]
*740 The ripeness issue was expressly not decided and it should not have been; therefore, plaintiffs motion to reconsider the ripeness issue must be denied.
Plaintiffs second submission is entitled "Plaintiffs Motion for Leave to Amend and/or Supplement His Pleadings.” Defendant, opposing the motion, quite rightly points out that it is an attempt to reopen the entire case and in addition to add to it a multitude of new claims never before presented to the court. While we are required by Rule 39 freely to permit amendment when justice so requires, it is not good practice (except in extraordinary circumstances not present here) to reopen entirely a case which has been decided entirely, especially where we made a special point in our previous order of pointing out to plaintiff that the order had ended the case. Plaintiffs motion for leave to amend should therefore be denied.
We finally arrive at the submission which seems most closely to address the narrow invitation in our order of March 5, 1982. It is called "Plaintiffs Memorandum of Points and Law in Support of His Counterclaim [sic] for Damages, Travel and Transportation Expenses Growing Out of His Alleged Unlawful Removal and Reassignment from Frankfurt, West Germany, to Alexandria, Virginia.” The scope of that invitation is entirely clear from the order itself. It was for the purpose of
pressing a claim * * * that he was not in fact reimbursed for his 1981 travel expenses from Germany to Alexandria, as authorized by DD Forms 1614 executed on April 27 and 28,1981 * * * [Emphasis supplied.]
It was and is our understanding that through those forms defendant accepted responsibility for the expenses described therein and that the sole remaining issue was a factual one — whether plaintiff was in fact paid pursuant to those authorizations.
We have carefully examined plaintiffs "counterclaim.” It does not at any point refer, directly or indirectly, to the payments or authorizations specifically noted in our order of March 5, 1982. Plaintiff has therefore failed to press a claim for nonpayment of the amounts authorized by the DD Forms 1614 executed on April 27 and 28, 1981. Pursuant to our order, his claims must be dismissed.
*741 In the counterclaim, plaintiff alleges a series of wrongs done him in 1981 in connection with his transfer from Germany to Virginia and with his application for another job. These claims are not within the scope of the action finally decided on March 5,1982, and must be considered, if at all, in a different proceeding. It is the duty of the parties in the first instance to narrow and clarify the issues for the court’s consideration. As these subsidiary claims seem to involve action by both military administrative appeals authorities and the Merit Systems Protection Board, we take this opportunity to suggest to plaintiff that if he elects to pursue those claims in a separate action he make a special effort to clarify the procedural setting of the claims, including their relation to administrative action and prior action on his case by this court, as required by Rule 35(b).
it is therefore ordered that plaintiff is granted leave to file his various motions submitted on April 5, 1982, and, after careful consideration of the parties’ submissions and without oral argument, that (1) plaintiffs motion for reconsideration is denied; (2) plaintiffs motion to amend the pleadings is denied; and (3) pursuant to our order of March 5, 1982, in this case, plaintiffs claims are dismissed in their entirety.

 We recognize that the agency is operating in that area where personnel actions are governed by regulations which do not always bear a direct, one-to-one relationship with the sections of the statute. Rather, they develop a general regulatory scheme based on a group of sections, in this case a subchapter, 5 U.S.C. §§5721-5733, taken as a whole. Whatever the merits or demerits of this regulatory approach, the statute’s language must ultimately control and we must consider the travel agreement in its statutory context.