**ANNUITY TRANSFERS, LTD.
and Bobbie V. Thompson,
Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 08–386 C.

United States Court of Federal Claims.

March 18, 2009.

Elyse L. Strickland, Bethesda, MD, for plaintiff Annuity Transfers, Ltd.

Bobbie V. Thompson, Haughton, LA, pro se.

Devin A. Wolak, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

SWEENEY, Judge.

In this action, plaintiffs seek a declaration from the court approving a structured settlement factoring transaction concerning an annuity purchased and owned by the United States. Defendant contends that this court lacks jurisdiction over plaintiffs' complaint and seeks dismissal pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). In the alternative, defendant moves for summary judgment pursuant to RCFC 56, contending that it is entitled to judgment as a matter of law. For the reasons set forth below, the court grants defendant's motion to dismiss and denies as moot defendant's motion for summary judgment.

## I. BACKGROUND[1]

On December 8, 1989, Melvin Ladell Smith was injured when a United States Postal Service truck collided with the motorcycle he was riding. *Smith* Compl. ¶¶ 4–5. Subsequently, on May 24, 1991, Mr. Smith filed suit against the United States in the United States District Court for the Southern District of Texas, pursuant to the Federal Tort Claims Act, seeking damages in the amount of $600,000. *Id.* ¶¶ 1–8. On January 15, 1993, Mr. Smith and the United States executed a Stipulation for Compromise Settlement ("settlement agreement"), in which the United States agreed to pay Mr. Smith the sum of $123,434 and to purchase an annuity to provide Mr. Smith with a stream of future payments.[2] App. 1–5. Specifically, the set-

---

1. The court derives the facts in this section from plaintiffs' Complaint for Declaratory Relief ("Compl."), the exhibits attached to the complaint ("Compl. Ex."), the appendix attached to defendant's proposed findings of uncontroverted fact ("App."), and the complaint filed in *Smith v.* *United States,* No. H–91–1468 (S.D.Tex. May 24, 1991) ("*Smith* Compl.").

2. Such an arrangement is known as a "structured settlement," which is a method of paying a damage award to a tort victim over a period of

tlement agreement set forth the following payment schedule:

On 4–01–1993, begin paying $700.00 per month for 45 years Certain and Life with the payments increasing at 3% per year. The last guaranteed payment will be made on 3–01–2038.

On 8–12–1996, pay $10,000.00

On 8–12–1999, pay $12,500.00

On 8–12–2002, pay $15,000.00

On 8–12–2005, pay $17,500.00

On 8–12–2008, pay $20,000.00

On 8–12–2011, pay $22,500.00

On 8–12–2014, pay $55,000.00

On 8–12–2017, pay $27,500.00

On 8–12–2020, pay $30,000.00

On 8–12–2023, pay $43,000.00

*Id.* at 2. The payments were to be made to Mr. Smith, "if living, otherwise to his designated beneficiary." *Id.* In addition, the settlement agreement specifically provided that the United States was to be the "sole and exclusive owner of the annuity. . . ." *Id.*

The United States purchased an annuity with the agreed-to terms from the National Home Life Assurance Company on March 5, 1993. *Id.* at 6, 13. The annuity contract established that the United States owned the annuity, that Mr. Smith was the annuitant, and that "Bobie" White,[3] Mr. Smith's stepsister, was the designated beneficiary. *Id.* at 11, 13. The annuity contract also provided that "only" the owner, *i.e.*, the United States, could "make an assignment of this policy." *Id.* at 10.

Mr. Smith died in January 2007. Compl. Ex. 6, ¶ 10. Thus, Mr. Smith's designated beneficiary—Ms. Thompson—began to receive the annuity payments as set forth in the annuity contract. Compl. Ex. 2 at 3–4. At that time, Ms. Thompson lived in Haughton, Louisiana, *id.* at 1, where she continues to reside, Compl. Ex. 6, ¶ 1. On September 18, 2007, Ms. Thompson sought to sell a portion of her future annuity payments to plaintiff Annuity Transfers, Ltd. ("Annuity Transfers") in return for a lump sum.[4] Compl. Ex. 1 at 16; Compl. Ex. 2 at 1–5. Annuity Transfers is "a limited partnership with its principal place of business located in Richardson, Texas," Compl. ¶ 1, that purchases structured settlement payments.

Ms. Thompson and Annuity Transfers ultimately entered into a formal Transfer and Assignment Agreement on January 22, 2008. Compl. Ex. 1 at 1–15. The agreement contained a general description of the transaction: "Purchaser desires to purchase and acquire from the Seller, and the Seller desires to sell, assign, transfer, and convey to Purchaser, all of Seller's right, title, and interest in and to, including the right to receive, certain of the Settlement Payments and Annuity Payments. . . ." *Id.* at 1. Specifically, in return for a lump sum of $91,700, Ms. Thompson agreed to assign her right to receive the following annuity payments to Annuity Transfers:[5]

132 monthly payments of $700.00 beginning 04/01/2008 through and including 03/01/2020, one lump sum of $20,000.00 due on 8/12/2008, one lump sum of $17,500.00 due on 8/12/2011, one lump sum of $17,500.00 due on 8/12/2014, one lump sum

time, and "evolved as a way to foreclose a tort victim from improvidently exhausting his award." *TransAm. Assurance Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 259 (6th Cir.2007).

**3.** "Bobie" is the spelling of Ms. White's first name as it appears on the annuity application, App. 11, and the addendum to the annuity application, *id.* at 13. Plaintiff Bobbie V. Thompson, prior to January 30, 2004, was married to David Arnold White, Compl. Ex. 2 at 2, and is now married to Robert William Thompson, *id.* at 1. Ms. Thompson identifies herself as Mr. Smith's beneficiary. *Id.* at 3. Thus, the court finds that Ms. White and Ms. Thompson are the same individual.

**4.** Such a transaction is known as "factoring." *TransAm. Assurance Corp.*, 489 F.3d at 259.

**5.** When Ms. Thompson and Annuity Transfers executed the Transfer and Assignment Agreement, Monumental Life Insurance Company ("Monumental") was the entity making the annuity payments to Ms. Thompson. Compl. Ex. 1 at 1. National Home Life Assurance Company was a predecessor to Monumental. *See Monumental Life Ins. Co. v. Nationwide Ret. Solutions, Inc.*, 242 F.Supp.2d 438, 443 (W.D.Ky.2003).

of $17,500.00 due on 8/12/2017 and one lump sum of $17,500.00 due on 8/12/2020[.] *Id.* at 16.

The Transfer and Assignment Agreement set forth several conditions that had to be met before Annuity Transfers and Ms. Thompson could close their transaction. *See id.* at 8–9. The relevant condition in this case is as follows:

> 5.5 *Court Approval of the Transaction.* Seller understands and acknowledges that the Transaction contemplated by this Agreement must be approved by a court of competent jurisdiction in accordance with an applicable state transfer statute of a state of the United States of America and must be structured, consummated, closed and approved in accordance with certain applicable laws of the United States of America.[6] A further condition and contingency to the Closing of the Transaction is that the Purchaser and/or the Seller shall have procured and/or received a court order, judgment, or decree (the Court Order, as previously defined) approving the sale assignment, and transfer of the Assigned payments to Purchaser. Seller shall cooperate with and assist Purchaser, in all respects, to secure said Court Order. If the Court Order is denied, Purchaser may, but shall have no obligation to, appeal such denial. If, however, Purchaser does pursue an appeal of such denial, Seller shall fully cooperate and assist Purchaser in connection with said appeal.

*Id.* at 9 (footnote added). In addition to the aforementioned terms, Ms. Thompson represented that she had "all requisite power and authority and ha[d] taken all action necessary to execute and enter into" the Transfer and Assignment Agreement. *Id.* at 3. She also represented that her "execution and delivery" of the agreement and "the closing of" the transaction did not "violate any statute or regulation" or "require the consent, authorization, or approval of . . . any federal, state, local or other governmental agency or authority." *Id.*

In their May 28, 2008 complaint, plaintiffs do not contend that they have petitioned a court pursuant to an applicable state transfer statute to obtain the necessary court order, judgment, or decree as required by the Transfer and Assignment Agreement. Rather, plaintiffs indicate that because "the United States objects to the approval of the transfer of [Ms. Thompson]'s structured settlement payments as set forth in the Transfer Agreement notwithstanding the parties' compliance with" the relevant state law, they are requesting that the United States Court of Federal Claims ("Court of Federal Claims") "enter a declaratory judgment and order" that includes the following: (1) a declaration that the proposed transfer is in Ms. Thompson's best interests, is "fair and reasonable to all interested parties," and "does not contravene" any federal or state law or court order; (2) a declaration that Ms. Thompson "may lawfully assign" the payments specified in her agreement with Annuity Transfers; (3) a declaration that this court's order constitutes a "qualified order" as defined by the relevant federal statute; (4) an order directing the United States to send the specified payments to Annuity Transfers; and (5) any other necessary relief. Compl. ¶¶ a-e. Plaintiffs' "Request for Declaratory Relief" is their sole claim for relief. *Id.* ¶¶ 13–25.

The parties have concluded briefing on the instant motion, and the court deems oral argument unnecessary.

## II. DEFENDANT'S RCFC 12(b)(1) MOTION TO DISMISS

### A. Legal Standard

In its motion to dismiss, defendant seeks dismissal of plaintiffs' complaint pursuant to RCFC 12(b)(1). In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiffs' favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995). However, plaintiffs bear the burden

---

6. Plaintiffs aver that by virtue of Ms. Thompson's residence in the state of Louisiana, the applicable state transfer statute is the Louisiana Structured Settlement Act, La.Rev.Stat. Ann. § 9:2715 (2008). Compl. ¶ 11. In the alternative, plain-tiffs aver that the Iowa transfer statute—the Structured Settlement Protection Act, Iowa Code §§ 682.1–.7 (2008)—applies by virtue of Monumental's domicile. Compl. ¶ 12.

of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds*, 846 F.2d at 747. If the court concludes that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B. Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

█ The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

█ Here, plaintiffs assert jurisdiction under the Tucker Act, which provides that the Court of Federal Claims has jurisdiction over claims against the United States for money damages that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2006); *see also King*, 395 U.S. at 2–3, 89 S.Ct. 1501

("Throughout [the United States Court of Claims'] entire history …, its jurisdiction has been limited to money claims against the United States Government."). The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir. 1994) (en banc).

### C. Only Ms. Thompson Has Standing to Pursue a Claim Based Upon the Settlement Agreement

Although plaintiffs invoke Tucker Act jurisdiction in their complaint, they do not specify the substantive source of law upon which their claim is based. Annuity Transfers attempts to rectify this problem by characterizing plaintiffs' claim as one "based on a contract with the United States." Pl. Annuity Transfers, Ltd.'s Opp'n Def.'s Mot. Dismiss & Opp'n Def.'s Mot. Summ. J. ("Opp'n") 6; *accord id.* at 7, 17; *see also* Compl. ¶ 4 (citing 28 U.S.C. § 1491). Plaintiffs discuss three contracts in their complaint: (1) the settlement agreement between Mr. Smith and the United States; (2) the annuity purchased by the United States to fund its payment obligations under the settlement agreement; and (3) the Transfer and Assignment Agreement between Ms. Thompson and Annuity Transfers. *See* Compl. ¶¶ 5, 7–8. According to Annuity Transfers, however, the court's jurisdiction to entertain plaintiffs' complaint is based upon only the first of these contracts—the settlement agreement between Mr. Smith and the United States. Opp'n 6.

█ As an initial matter, because neither plaintiff is a party to the settlement agreement with the United States, the court must determine whether plaintiffs have standing to pursue a claim based upon the settlement agreement. To maintain a claim

based upon an express or implied contract under the Tucker Act, "there must be privity of contract between the plaintiff and the United States." *Cienega Gardens v. United States,* 194 F.3d 1231, 1239 (Fed.Cir.1998). It is clear that Ms. Thompson is in privity with the United States because she is the successor to Mr. Smith's rights under the settlement agreement. In the settlement agreement, Mr. Smith and the United States expressly agreed that upon Mr. Smith's death, the remaining annuity payments would be made to "his designated beneficiary," App. 2, and Ms. Thompson was Mr. Smith's "designated beneficiary" at the time of this death, *id.* at 11; Compl. Ex. 2 at 3–4. Thus, Ms. Thompson has standing to pursue a claim based upon the settlement agreement.

■ On the other hand, Annuity Transfers' standing to pursue a claim based upon the settlement agreement is not readily clear. Annuity Transfers argues that the court can confer privity between it and the United States because "under circumstances where the federal and state transfer statutes are followed and *the assignment is made pursuant to judicial order,* the assignee should have standing to maintain a claim based on the rights being asserted." Opp'n 9 (emphasis added). The argument advanced by Annuity Transfers is premised on the existence of a valid assignment. However, that is not the situation presented by these facts. Here, there is no valid assignment. Although it is

true that Ms. Thompson agreed to assign the specified annuity payments to Annuity Transfers pursuant to the Transfer and Assignment Agreement, the assignment cannot be finalized until the parties have obtained the necessary court order.[7] *See* Compl. Ex. 1 at 9; *see also id.* at 8–9 (setting forth other conditions necessary for the closing of the transaction); Restatement (Second) of Contracts § 324 (1981) ("It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee."); *id.* § 330 cmt. a ("[T]here is no assignment if the transfer is not to take place until the obligee acts further."). It is clear that in this case, plaintiffs have not obtained the necessary court order—indeed, this is what plaintiffs seek from this court. Thus, Annuity Transfers cannot stand in Ms. Thompson's shoes as an assignee with respect to the settlement agreement. In short, Annuity Transfers' theory of privity is based upon Ms. Thompson's agreement to the assignment, in complete disregard of any opposition that the owner of the annuity—the United States—has to the assignment.

Moreover, Annuity Transfers clearly does not fall within the intended third-party beneficiary exception to the privity requirement.[8] "In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that

---

7. For this reason, the cases cited by Annuity Transfers in support of its privity argument—*Rel–Reeves, Inc. v. United States,* 221 Ct.Cl. 263, 606 F.2d 949 (1979), and *Keydata Corp. v. United States,* 205 Ct.Cl. 467, 504 F.2d 1115 (1974)—are not on point. The assignments at issue in both cited cases had prior judicial approval. *See Rel–Reeves, Inc.,* 606 F.2d at 955 ("[T]he transfer of the patent in suit and the claim against defendant to Rel–Reeves, and the subsequent transfer back to DCA of the same patent and claim were one continuous judicially supervised transaction, and were not independent and unrelated assignments."), 957 ("[T]he court ordered and authorized both assignments."); *Keydata Corp.,* 504 F.2d at 1119 ("The first significant fact about the assignment of Wyman's claim against the Government to Keydata is, of course, that it was done under order of the Superior Court of Massachusetts, as a result of an adversary proceeding.").

8. The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has enumerated several exceptions to the privity requirement: suits by intended third-party beneficiaries, suits by subcontractors "by means of a pass-through suit when the prime contractor is liable to the subcontractor for the subcontractor's damages," and suits by government contract sureties "for funds improperly disbursed to a prime contractor." *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1289 (Fed. Cir.1999); *see also id.* ("[T]he common thread that unites these exceptions is that the party standing outside of privity by contractual obligation stands in the shoes of a party within privity."). Because this case does not concern a government procurement contract, the latter two exceptions are inapplicable.

it reflects an intention to benefit the party directly." *Glass v. United States*, 258 F.3d 1349, 1354 (Fed.Cir.2001). As evidence of intent, the court must consider "the language of the contract itself." *Dewakuku v. Martinez*, 271 F.3d 1031, 1041 (Fed.Cir.2001). The settlement agreement is devoid of evidence that Mr. Smith and the United States contemplated the sale of Mr. Smith's annuity payments to a third party in general, or to Annuity Transfers in particular. Indeed, Ms. Thompson did not seek to sell the specified annuity payments to Annuity Transfers until fourteen years after Mr. Smith and the United States had executed the settlement agreement. Thus, to the extent that plaintiffs' complaint asserts a Tucker Act contract claim based on the settlement agreement, plaintiff Annuity Transfers must be dismissed for lack of standing.

## D. Ms. Thompson Does Not Seek Presently Due Money Damages Arising From the Settlement Agreement

 The court has concluded that Ms. Thompson has standing to pursue a claim based upon the settlement agreement. However, that does not end the court's inquiry because Ms. Thompson faces another jurisdictional hurdle: her claim against the United States based upon the settlement agreement must seek "actual, presently due money damages from the United States." *King*, 395 U.S. at 3, 89 S.Ct. 1501. According to Annuity Transfers,[9] the complaint contains a "claim for money presently due and owing" because it "is based on a contractual provision that expressly requires the payment of money." Opp'n 6. Annuity Transfers' interpretation is too literal; a contract that requires the periodic payment of money does not automatically provide a basis for a claim for money

damages. To the contrary, if a payor obligated to make periodic payments under a contract is, in fact, making those payments in full compliance with the express terms of the contract, the payee receiving those payments has no claim for money damages absent a breach of the contract. A payee's desire to unilaterally change a contract's payment terms does not constitute a breach of contract. In the instant case, plaintiffs do not allege that the United States is not paying Ms. Thompson the amounts specified in the settlement agreement at the times specified in the settlement agreement or that the United States has otherwise breached the settlement agreement.[10] Thus, Ms. Thompson's desire to receive a lump sum payment in lieu of some of the annuity payments constitutes a change to the terms of the settlement agreement, and does not reflect any breach of the settlement agreement by the United States. Accordingly, although the settlement agreement provides for the periodic payment of money to Ms. Thompson, it does not, given the facts of this case, support Ms. Thompson's claim for presently due money damages.

Annuity Transfers next argues that "a claim for annuity benefits is for money presently due because it does not require 'further action on anyone's part to create the entitlement thereto.'" *Id.* at 7 (quoting *Gentry v. United States*, 212 Ct.Cl. 1, 546 F.2d 343, 346 (1976)). *Gentry* is distinguishable from the instant case on its facts. In *Gentry*, plaintiff averred that he was entitled to survivor benefits under the Civil Service Retirement Act of 1930, and that the Civil Service Commission, relying on an unconstitutional eligibility requirement set forth in the statute,[11] im-

9. Ms. Thompson did not file a brief in opposition to defendant's combined motion. However, Annuity Transfers' arguments concerning the existence of a claim for money damages pertain to both plaintiffs.

10. Instead, plaintiffs' claim is that, to the extent that the settlement agreement permits Ms. Thompson to assign her rights to the annuity payments, the United States would refuse, upon their request, to direct Monumental to divert the annuity payments from Ms. Thompson to Annuity Transfers. Because plaintiffs have not actually requested that the United States divert the annuity payments pursuant to the settlement agree-

ment, their presumption of how the United States would respond is purely speculative and therefore cannot constitute a breach.

11. Specifically, the statute, which provided "certain monetary benefits to surviving children of a deceased civil service employee or annuitant," defined those children eligible for benefits as "legitimate issue, adopted children, and any 'stepchild or recognized natural child who lived with the employee ... in a regular parent-child relationship.'" *Gentry*, 546 F.2d at 348 (quoting 5 U.S.C. § 8341(a)(3)(A)(ii) (1970)). The Civil Service Commission denied plaintiff benefits "because he did not live in the deceased annuitant's

properly denied him those benefits. 546 F.2d at 344–45. In other words, plaintiff's entitlement to survivor benefits arose from a statute and, due to the statutory eligibility requirements, plaintiff had not yet received any payments. Thus, the United States Court of Claims' holding that plaintiff presented a claim for "money presently due," *id.* at 346, was premised on the fact that plaintiff had not yet received any survivor benefits to which he was statutorily entitled. That is not the situation here. Unlike the plaintiff in *Gentry,* Ms. Thompson is and has been receiving the annuity payments to which she is entitled pursuant to the express terms of a contract-the settlement agreement. Accordingly, the *Gentry* decision lends no support to Ms. Thompson.

Annuity Transfers' final contention is that Ms. Thompson has asserted a claim for presently due money damages because the United States is under a continuing duty to make payments under the settlement agreement and thus, has not yet fulfilled its entire contractual obligation. Opp'n 7. Annuity Transfers cites *Massie v. United States* in support of its argument. In *Massie,* plaintiff entered into an agreement with the government in which the government agreed to purchase an annuity on plaintiff's behalf. 166 F.3d 1184, 1186 (Fed.Cir.1999). Problematically, after the government purchased the annuity, the provider of the annuity went into conservatorship, resulting in payments to plaintiff that were less than the amount set forth in plaintiff's agreement with the government. *Id.* at 1187. In addressing the government's obligations under its agreement with plaintiff, the Federal Circuit concluded:

> The language [in the Agreement] specifying that the annuity "will result in distributions" and that the disbursements "shall be paid" is unambiguously mandatory and says unequivocally that [plaintiff] must receive the payments.... Because the payments are mandatory, the government must be responsible for their payment; no one else is a party to the Agreement. Although the government may delegate its duties under the Agreement to another entity, such as [an annuity provider], this

delegation does not absolve it of its obligations.

*Id.* at 1190. Arguably, the Federal Circuit's conclusion that the government had a continuing obligation to make the agreed-to mandatory payments, even after delegating the payment responsibility to a third party, is applicable in this case. To the extent *Massie* applies here, if Monumental stopped making annuity payments to Ms. Thompson, the United States would remain liable to make those payments. However, Monumental has not stopped making annuity payments to Ms. Thompson in contravention of the settlement agreement. Rather, Ms. Thompson wishes to transfer some of her annuity payments to Annuity Transfers in exchange for a lump sum payment. Thus, while *Massie* supports Ms. Thompson's ability to pursue a claim based upon the settlement agreement if she stopped receiving the promised annuity payments, those facts are not presented by this case. *Massie* does not address whether a party who continues to receive annuity payments as promised, like Ms. Thompson, can assert a claim for presently due money damages.

Ultimately, Ms. Thompson is currently receiving precisely what the United States agreed to pay to her under the terms of the settlement agreement. Thus, she is not alleging that the United States has breached its payment obligation. In fact, Ms. Thompson is not seeking any money from the United States at all. Because she is not seeking "actual, presently due money damages from the United States" that arise from the settlement agreement, *King,* 395 U.S. at 3, 89 S.Ct. 1501, the court lacks jurisdiction over her claim.

### E. Ms. Thompson Does Not Seek Presently Due Money Damages Arising From the Annuity Contract

Although plaintiffs do not specifically contend that the other contracts described in the complaint provide a basis for the court's jurisdiction, the court is obligated to explore all potential sources of jurisdiction to its satisfaction. The second of the three contracts identified by plaintiffs in their complaint is

home 'in a regular parent-child relationship.'" *Id.* at 344.

the annuity contract purchased by the United States from National Home Life Assurance Company.[12] Problematically, as with the settlement agreement, neither plaintiff was a party to the annuity contract. This fact is fatal to Annuity Transfers' standing to pursue a claim based upon the annuity contract because, for the reasons discussed above, Annuity Transfers is neither an assignee nor an intended third-party beneficiary.

■ However, once again, Ms. Thompson has standing. The parties to the annuity contract—the United States and National Home Life Assurance Company—entered into the contract for the benefit of a third party—Mr. Smith. As an intended third-party beneficiary of the annuity contract, Mr. Smith was entitled to enforce its terms. *See Glass*, 258 F.3d at 1354; *First Hartford Corp. Pension Plan & Trust*, 194 F.3d at 1289. Upon Mr. Smith's death, Ms. Thompson stepped into his shoes and thus could enforce the contract in the same manner. Thus, the only issue is whether Ms. Thompson seeks "actual, presently due money damages from the United States," *King*, 395 U.S. at 3, 89 S.Ct. 1501, that arise from the annuity contract.

Initially, the court notes that to the extent that Annuity Transfers' arguments that Ms. Thompson asserts a claim for presently due money damages based upon the settlement agreement can be applied to a claim based upon the annuity contract, those arguments must fail for the same reasons articulated above. Moreover, an examination of the substance of Ms. Thompson's claim confirms that she is not seeking monetary relief arising from the annuity contract. *See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 944 (Fed.Cir.2007) ("In determining whether a claim is for monetary relief, a court must look beyond the form of the pleadings to the substance of the claim."); *Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed.Cir.1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, we customarily look to the substance of the pleadings rather than their form."). As noted above, there is no dispute that Ms. Thompson is receiving the annuity payments in an amount and on a schedule set forth in the annuity contract. Thus, she cannot successfully argue that the United States or Monumental owes her any unpaid money. Instead, Ms. Thompson is, in effect, requesting that the Court of Federal Claims alter the terms of the annuity contract by forcing the United States to allow the assignment of certain, specified annuity payments to a third party despite the United States' right under the annuity contract to control all assignments. *See* Compl. ¶ 24 (alleging that the United States objected to the assignment of the annuity payments); App. 10 (noting that only the United States could "make an assignment of this policy"). Accordingly, Ms. Thompson is requesting injunctive relief, not monetary relief.[13]

■ The Court of Federal Claims cannot entertain claims for nonmonetary equitable relief, except in three statutorily defined circumstances. *See Bowen v. Massachusetts*, 487 U.S. 879, 905 & n. 40, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 490 F.3d at 943; *Kanemoto v. Reno*, 41 F.3d 641, 645 (Fed. Cir.1994). None of those circumstances ap-

---

12. The third contract identified by plaintiffs is the Transfer and Assignment Agreement. Because the United States is not a party to that agreement, plaintiffs cannot obtain relief in this court that might arise from the agreement. *See Cienega Gardens*, 194 F.3d at 1239 (requiring "privity of contract between the plaintiff and the United States"); *see also Sherwood*, 312 U.S. at 588, 61 S.Ct. 767 (concluding that jurisdiction in the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court" (citations omitted)); *Nat'l City Bank of Evansville v. United States*, 143 Ct.Cl. 154, 163 F.Supp. 846, 852 (1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." (footnotes omitted)).

13. Indeed, in the complaint, Ms. Thompson clearly requests equitable, not monetary, relief. *See, e.g.*, Compl. ¶ 25 ("A declaratory judgment in this case is necessary....").

plies here. See 28 U.S.C. § 1491(a)(2) (providing the court with jurisdiction to issue, "as incident of and collateral to" an award of money damages, "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records"); *id.* (providing the court with jurisdiction to render judgment in nonmonetary disputes arising under the Contract Disputes Act of 1978); *id.* § 1491(b)(2) (providing the court with jurisdiction to award declaratory and injunctive relief in bid protests). Accordingly, contrary to Annuity Transfers' assertion, Opp'n 8, the court lacks jurisdiction to provide the relief requested by Ms. Thompson to the extent that her claim is based upon the annuity contract.[14]

### F. Plaintiffs Have Not Alleged Jurisdiction Pursuant to a Money–Mandating Statute

■ Finally, the court addresses one additional issue implicated by plaintiffs' complaint, but not raised by plaintiffs themselves: whether plaintiffs have alleged a money-mandating statute that provides for jurisdiction in the Court of Federal Claims. In order to find that a statute or regulation is money-mandating pursuant to the Tucker Act, "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967); *see also id.* at 1009 ("Under Section 1491, what one must always ask is whether the constitutional clause or legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."). Other than 28 U.S.C. § 2201 (2006), which concerns declaratory, and not monetary, relief, plaintiffs cite only one fed-

eral statute in their complaint: 26 U.S.C. § 5891 (2006). *See* Compl. ¶¶ 9–10, a, c.

■ Section 5891, titled "Structured settlement factoring transactions," provides for an excise tax on the sale of a structured settlement, which is assessed on the structured settlement's purchaser. 26 U.S.C. § 5891(a). However, the purchaser can avoid paying the tax if "the transfer of structured settlement payment rights is approved in advance in a qualified order." *Id.* § 5891(b)(1). The "qualified order," for the purposes of the instant case, is "a final order, judgment, or decree"—issued "under the authority of an applicable State statute by an applicable State court"—that "finds that the transfer . . . does not contravene any Federal or State statute or the order of any court . . . and . . . is in the best interest of the payee. . . ." *Id.* § 5891(b)(2)(A)(B). An "applicable State statute" is one that was "enacted by . . . the State in which the payee of the structured settlement is domiciled," or, if no such statute, one that was "enacted by . . . the State in which either the party to the structured settlement . . . or the person issuing the funding asset for the structured settlement is domiciled or has its principal place of business." *Id.* § 5891(b)(3)(A)-(B). And, an "applicable State court" is "a court of the State which enacted [the] statute." *Id.* § 5891(b)(4)(A).

Thus, to avoid the excise tax imposed by section 5891(a), Annuity Transfers was required to obtain a qualified order from a Louisiana state court approving the transaction. Further, the Louisiana state court was required to indicate in the qualified order that the transfer was lawful and in Ms. Thompson's best interests. However, section 5891 does not require Annuity Transfers to obtain a qualified order—one is required only if Annuity Transfers wanted to avoid the excise tax—or require the Louisiana state

---

14. In *TransAmerica Assurance Corp.,* the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") concluded that the Court of Federal Claims was the exclusive forum in which an entity such as Annuity Transfers could pursue "rights as a purported assignee of the annuity contract" owned by the United States when the "value of the claim" exceeded $10,000. 489 F.3d at 263 & n. 11 (citing 28 U.S.C. §§ 1346, 1491; *Ins. Co. of the W. v. United States,* 243 F.3d 1367, 1375 (Fed.Cir.2001)). However, the

Sixth Circuit's broad statement fails to take into consideration the Court of Federal Claims' limited ability to provide equitable relief, such as what is requested here. Accordingly, the Sixth Circuit's conclusion is not instructive in this case. *See Bankers Trust N.Y. Corp. v. United States,* 225 F.3d 1368, 1371 (Fed.Cir.2000) (noting that although decisions of federal appellate courts may be "persuasive in their own right," they are not binding on the Court of Federal Claims).

court to issue a qualified order—one is issued only if the court is satisfied that the statutory requirements have been met. Accordingly, section 5891 does not grant Annuity Transfers or Ms. Thompson the right to have their transaction approved, much less the "right to be paid a certain sum." *Eastport S.S. Corp.*, 372 F.2d at 1007. Moreover, section 5891 creates no obligation on the part of the United States to pay plaintiffs "a certain sum." *Id.* Thus, even if the statute described "a right to be paid a certain sum," *id.*, that sum would not come from the United States. Altogether, section 5891 is not a money-mandating statute that creates a "substantive right enforceable against the United States for money damages." *Testan*, 424 U.S. at 398, 96 S.Ct. 948.

### III. CONCLUSION

In this case, plaintiffs seek relief from this court that is outside of the court's jurisdiction. In essence, plaintiffs are requesting that this court issue a qualified order pursuant to 26 U.S.C. § 5891(b). Not only does such an order constitute declaratory relief that this court is unable to provide, but section 5891 clearly requires plaintiffs to obtain the qualified order from a Louisiana state court. Plaintiffs attempt to circumvent this clear language by arguing that their claim is not a statutory claim but a contractual claim. However, neither the contract relied upon by Annuity Transfers—the settlement agreement—nor the two other contracts described in plaintiffs' complaint—the annuity contract and the Transfer and Assignment Agreement—provides a basis for jurisdiction in the Court of Federal Claims. Moreover, plaintiffs have failed to invoke a money-mandating federal statute.

Accordingly, for the reasons set forth above, the court **GRANTS** defendant's motion to dismiss and dismisses plaintiffs' complaint for lack of jurisdiction. The court also **DENIES AS MOOT** defendant's motion for summary judgment. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**